UNITED STATES ex rel. NEW YORK WAREHOUSE, WHARF & TERMINAL ASS'N, Inc., et al. v. DERN, Secretary of War.

No. 5987.

Court of Appeals of the District of Columbia.

Argued Dec. 4, 1933.

Decided Jan. 2, 1934.

John Philip Hill, Francis W. Hill, Jr., and Robert F. Cogswell, all of Washington, D. C., and Harper A. Holt, of New York City, for appellants.

Leo A. Rober, U. S. Atty., and John J. Wilson, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the Supreme Court of the District dismissing appellants' petition for a writ of mandamus to compel the Secretary of War (1) to cancel lease agreements made between the Secretary and the Mercur Trading Corporation, as lessee; (2) to eject the corporation from the leased property; and (3) to desist from the commercial operation of the premises.

The material facts stated in the petition are as follows: In 1918 the United States purchased property (approximately 136 acres) commonly called the Port Newark Army Supply Base, and constructed thereon extensive warehouses as a terminal storage space for the handling of large quantities of supplies in and around the port of New York en route overseas to the American Expeditionary Forces.

Appellants are corporations organized under the laws of the state of New York, and own and operate extensive warehouses and piers in the vicinity of the supply base, which was leased by the government to the Mercur Corporation. Appellants are engaged in the operation of docks, wharfs, and storehouses, the business in which the Mercur Corporation is engaged, and are therefore in direct competition. The Mercur Corporation, because of the advantageous provisions of the lease agreements, is able to underbid appellants, which agreements it is averred are not lawful, in that the same were not concluded by the President, through the Secretary of War; and for other reasons not necessary to be stated.

The original lease to the Mercur Corporation, dated November 30, 1926, and covering a period of ten years, recites that "it is in the interest of the United States to lease the premises known as the Port Newark Army Supply Base," and that the lease is made under the authority conferred by the act of July 11, 1919 (chapter 8, 41 Stat. 104, 129, 10 USCA § 1263), which authorized the President "through the head of any executive department, upon terms and conditions considered advisable by him or such head of department, to sell or lease real property or any interest therein or appurtenant thereto acquired by the United States of America since April 6, 1917, for storage purposes for the use of the Army, which in the judgment of the President or the head of such department is no longer needed for use by the United States of America, and to execute and deliver in the name of the United States and in its behalf any and all contracts, conveyances, or other instruments necessary to effectuate any such sale or lease." Five supplementary lease agreements were subsequently executed (three in 1927, one in 1928, and one in 1930). The Mercur Corporation was authorized to occupy the leased premises

"for terminal, storage warehouse, and/or manufacturing purposes," with the right to sublet such portion or portions of the property as the lessee might desire.

The demurrer interposed to the petition was sustained, and, appellants electing to stand on the petition, final judgment was entered.

The first question that arises is whether appellants have a sufficient legal interest in the subject-matter involved as to entitle them to maintain this proceeding. They do not claim to have any interest in the leased property. Their complaint is that the lessee, the Mercur Corporation, their competitor in business, has gained an undue advantage because of the challenged lease agreements.

In United States ex rel. Alsop Process Co. v. Wilson, 33 App. D. C. 472, a mandamus proceeding, the relator was a manufacturer of flour bleaching machinery, and sought to compel the Secretary of Agriculture to cancel an alleged illegal decision to the effect that bleached flour was an adulterated product under the Food and Drug Act. We said (page 478 of 33 App. D. C.): "Neither the relator nor its process is mentioned in this decision. The relator is neither the owner nor the manufacturer of bleached flour. Its sole excuse for attempting to stay the hand of the Secretary is that, since the promulgation of this decision by the Secretary, it has been unable to sell its patented process and apparatus, owing to the fear of prospective purchasers that, upon the recommendation of the Secretary, they will be prosecuted for manufacturing or selling an adulterated food product." We further pointed out that the relator as a corporate entity had no interest in the enforcement of duties owing by the Secretary to the public; that it sought to arrest the operations of an executive department solely because the indirect effect of the promulgation of an opinion by the head of that department had been to cause millers to cease purchasing relator's machinery; that, relator being neither an owner nor a manufacturer of bleached flour, its legal rights were not involved nor invaded by the action of the Secretary; and that it was a mere volunteer in the proceeding and, as such, without standing. Union Pacific R. R. Co. v. Hall, 91 U. S. 343, 354, 23 L. Ed. 428, and Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623, were relied upon by the relator, as they are in the present case. We pointed out that in the Hall Case it was held that merchants in Iowa, having frequent occasion to receive and ship goods over the Union Pacific Railroad, might, without the intervention of the Attorney General of the United States, institute a proceeding under an act of Congress which conferred upon the proper circuit court of the United States jurisdiction to hear and determine all cases of mandamus to compel the railroad company to operate its road as required by law. Failure of the railroad company in that regard brought a direct injury to the merchants who were permitted to institute the proceeding. The court went no further than to hold that the writ of mandamus may be issued at the instance of a private relator in all cases "where the defendant owes a duty, in the performance of which the prosecutor has a peculiar interest." In the McComb Case the relator was a holder of bonds directly affected by the funding act, the carrying out of which he sought to have restrained.

In United States ex rel. American Silver Producers' Ass'n v. Mellon, 59 App. D. C. 24, 32 F.(2d) 415, we again ruled that a corporation or an individual to maintain a mandamus action must have a personal and direct interest in the subject-matter of the litigation, and not merely an indirect or remote interest.

In Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078, the court ruled that, to invoke the judicial power to disregard a statute as unconstitutional, the party who assails it must show not only that the statute is invalid, but that he has sustained, or is immediately in danger of sustaining, some direct injury as a result of its enforcement.

Tested by the rule deducible from the authorities to which we have alluded, appellants are without standing in this proceeding. Their interest is not personal and direct, but indirect and remote. The act of July 11, 1919 (10 USCA § 1263), authorized the President, "through the head of any executive department, upon terms and conditions considered advisable by him or such head of department, to sell or lease real property or any interest therein or appurtenant thereto acquired by the United States of America since April 6, 1917. * * * " This statute, therefore, authorized the selling or leasing of the real property within its scope. If appellants' contention as to interest is sound, it necessarily would follow that any and all rival manufacturers, in the event of sale or lease to a manufacturer, would have such an interest as to entitle them through mandamus proceedings to challenge

the validity of the sale or lease. Such a result is not to be seriously entertained.

Without considering other questions suggested by appellee, we affirm the judgment.

Affirmed.