## ALABAMA POWER CO. v. ICKES, Administrator of P.W.A., et al.

## IOWA CITY LIGHT & POWER CO. v. SAME.*

### Nos. 6580, 6583, 6865.

United States Court of Appeals for the District of Columbia.

Argued Feb. 15, 1937.

Decided May 10, 1937.

Edward B. Burling, Spencer Gordon, Dean G. Acheson, Walter B. Guy, Louis H. Mann, and Howard C. Westwood, all of Washington, D. C., and Newton D. Baker, of Cleveland, Ohio, for appellants.

John W. Scott, Alexander Holtzoff, and James W. Morris, all of Washington, D. C., and Jerome N. Frank, of New York City, for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

These are appeals from decrees of the District Court dismissing in each case bills of complaint for injunction, after hearing on the merits, to restrain loans and grants by the Public Works Administration to aid in the construction of municipal electric light and power plants in certain cities and towns in the states of Alabama and Iowa.

*Decree reversed 58 S.Ct. 2, 82 L.Ed. ——.

The cases were consolidated for hearing in the court below, and were argued as one appeal in this court.

It appears that the Alabama Power Company, an Alabama corporation, owns and operates a generating, transmission, and distribution system in the state of Alabama, and distributes electrical energy to numerous communities in that state, including the cities of Florence, Decatur, Sheffield, and Tuscumbia, and the Towns of Hartselle, Russellville, and Guntersville, in each of which it owns and operates a local plant, in accordance with, and by authority of, the laws of the state of Alabama.

It also appears that the Iowa City Light & Power Company, a Delaware corporation, qualified to do business in the state of Iowa as a foreign corporation, is engaged in the generation of gas and electricity, and in the transmission, distribution, and sale thereof in Iowa City, Iowa, and in the incorporated towns of Coralville and University Heights in Johnson county, Iowa. With the exception of a limited sale of electricity by the city of Sheffield, these companies are the only agencies engaged in supplying electric light and power to the cities and towns above named.

The "loan and grant" agreements, under which these municipalities are to construct independent light and power plants, provide that the United States is to aid in the construction of the projects by purchasing from the municipalities their bonds, secured by a first pledge of the revenues derived from the operation of the projects, over and above the reasonable cost of operation and maintenance thereof. The grants made in the Alabama cases are equal to 30 per cent. of the cost of the labor and materials employed upon the projects, the balance of the cost to be loaned by the government. In the Iowa case the grant is for 45 per cent. of the cost of the project. The "loan and grant" agreements further provided: "This offer is made with the express understanding that neither the loan nor the grant herein described is conditioned upon compliance by the Applicant with any conditions not expressly set forth herein. There are no other agreements or understandings between the Applicant and the Government or any of its agencies in any way relating to said Project or the financing or the construction thereof."

These companies in their bills of complaint are challenging the authority of the defendants through the agency of the Public

Works Administration to aid and assist, by use of the public monies of the United States, in the construction by the various municipalities named of competing municipal electric distribution systems. The Alabama Company charged a conspiracy between the Public Works Administration and the Tennessee Valley Authority to disrupt and destroy its business, and by the unlawful use of public funds of the United States to carry into effect the President's announced "National Power Policy" to make electricity "more broadly available at cheaper rates to industry, to domestic and to agricultural consumers," and to regulate the rates for interstate generation, distribution, and sale of electricity.

It is also charged that this plan of the Public Works Administration is effected by inducing political subdivisions of the States to conspire with them in the accomplishment of their illegal purposes and in the unconstitutional and illegal disbursements of public moneys of the United States by joint action in carrying out as Federal Public Works projects the construction of electric generating and distributing plants and systems within such subdivisions, planned, built, and financed, under the control and direction of the Public Works Administration, and to be operated in such manner from time to time as directed by that agency. In the accomplishment of this end, it is charged that the defendants threaten private electric utilities in particular locations with the construction of projects with federal money, unless the private utilities agree to establish rates satisfactory to the Public Works Administration.

It is then charged that, if the defendants are permitted to carry out these unlawful agreements, "the property right of plaintiff to operate its property and to enjoy its franchise free from injurious competition brought about by unlawful means and to conduct its intrastate business and charge rates free from unconstitutional interference and domination by an agency or agencies of the federal government, will immediately be invaded and destroyed."

Plaintiff companies pray for injunctions to restrain the defendants from in any manner aiding in the construction or financing of electric distribution systems in the cities and towns named. The court below, upon a full hearing, dismissed the bills of the plaintiffs, and from the decrees entered this appeal was taken.

We find it unnecessary to discuss in detail the various contentions relied upon by plaintiffs to establish their right to injunctions, or to enter into any discussion of the authority of the Public Works Administrator or the constitutionality of the statutes under which he purports to act, since the right of plaintiffs to the relief sought is challenged on another ground which we think disposes of these cases.

It is urged that plaintiffs have not shown any legal or equitable right which will be infringed by the making of these loans, and consequently have no standing to maintain these actions. It is disclosed by the record and indeed conceded, that in some instances plaintiffs are operating under franchises which have not expired, and in other cases, where the franchises have expired, they are operating by consent or acquiescence of the local authorities. It is not claimed, however, that there is any material difference in the status of these companies in so far as their standing to maintain these actions is concerned. In no case do the plaintiffs have an exclusive franchise. It seems clear, therefore, that any injury which these plaintiffs may sustain from the making of these loans will result from the competition which will arise when the municipal plants begin to operate, hence it is contended that plaintiffs are not in a position to question the source from which the municipalities may derive the funds to construct their plants, whether it be lawful or unlawful.

Defendants contend that no legal injury is threatened to plaintiffs; that the threatened loss of business will be due to lawful competition of the municipalities, and merely damnum absque injuria; that the loss sustained, if any, will be caused by competition, which is lawful, and from which plaintiffs have no legal right to relief. On the other hand, plaintiffs contend that the competition would not exist were it not for the furnishing of the funds by the defendants; hence, if the statute under which these funds are supplied is unconstitutional or if the officer furnishing the funds is not authorized to do so, then they may challenge the validity of the statute or the authority of the officer. The lower court adopted this view, with which we are not in accord.

This question has been twice ruled upon by the Circuit Courts of Appeals. In Arkansas-Missouri Power Company v. Kennett, 78 F.(2d) 911, 914, the suit was by a power company to restrain the City of Kennett, Mo., and Secretary Ickes, as Public

Works Administrator, from carrying out loan and grant agreements similar to those involved in this case. The Circuit Court of Appeals for the Eighth Circuit, speaking through Judge Sanborn, said: "The court below was of the opinion that the power company was in no position to question the power of the federal government to loan or give money to the city of Kennett. We are in accord. The United States is not proposing to become a competitor of the power company. It will have no right, title, or interest in the plant when completed and nothing to do with operating it. The destruction of the power company's property will come about by reason of the city's operation of the plant when erected. The position of the United States is that of a lender of money, a buyer of bonds, and a giver of gifts. True, the money procured from the government will enable the city to build the plant, and, if the city builds the plant, it will no doubt operate it, and when it does operate the plant the city will take the customers of the power company, and the company's property in Kennett will become worthless or greatly impaired in value. We know of no rule of law, however, which permits one indirectly hurt, no matter how seriously, by a government expenditure, to question the power of the government to make it. In fact, the rule is to the contrary. Commonwealth of Massachusetts v. Mellon, Secretary of the Treasury et al., 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; City of Allegan, Mich. v. Consumers' Power Co. (C.C.A.6) 71 F.(2d) 477 (certiorari denied, 293 U.S. 586, 55 S.Ct. 100, 79 L.Ed. 681). It is true that in the cases cited the plaintiffs relied upon their status as taxpayers exclusively, while in this case the plaintiff relies, in addition, upon the injury which will be done to its property by municipal competition. That injury, however, is, so far as the government is concerned, clearly consequential and indirect, as we have pointed out."

In Greenwood County v. Duke Power Company, 81 F.(2d) 986, 997, a case involving a similar loan and grant agreement, the Circuit Court of Appeals for the Fourth Circuit reversed a decree of the District Court which granted the power company an injunction. The Circuit Court, speaking through Judge Parker, said: "For the reasons heretofore stated, the plaintiffs are not entitled to an injunction; but, even if the statute were unconstitutional or the action of the administrator unauthorized, they would not be entitled to the injunction which they ask, for the reason that no legal right of theirs is infringed by any proposed action of the county or of the commissioner of public works. The county, in its proposed action, will not infringe any such right; for it is thoroughly settled that competition by a county or municipality violates no right of a public service corporation doing business therein which, as is the case of plaintiffs here, has no exclusive franchise. Puget Sound Co. v. Seattle, 291 U.S. 619, 54 S.Ct. 542, 78 L.Ed. 1025; Madera Waterworks v. Madera, 228 U.S. 454, 33 S.Ct. 571, 57 L.Ed. 915. The administrator will not infringe any such right in making the loan and grant to the county from funds of the United States; for it is equally well settled that no citizen or taxpayer has any such right in funds of the government. Frothingham v. Mellon, 262 U.S. 447, 43 S. Ct. 597, 601, 67 L.Ed. 1078. * * * As the county infringes no right of plaintiffs by entering into competition with them, and as the administrator infringes no right of theirs in making loans or grants of public funds, it would seem to follow necessarily that no such right is infringed when the administrator makes a loan and grant to the county in order that the county may engage in competition; for the addition of negative quantities can never result in a quantity that is positive."

The Supreme Court of the United States reversed the Circuit Court of Appeals in this case, 299 U.S. 259, 57 S.Ct. 202, 81 L. Ed. 178, because of "irregularities in practice," holding that the case was heard upon a record improperly made up, and remanded the cause for a retrial. The plaintiffs argue from this that the Supreme Court impliedly recognized the standing of the utility company to raise the question of the constitutionality of the statute. We think this contention is without merit. The legal interest of the utility was a question in that case, and it was fully and exhaustively treated in the opinion of the Circuit Court of Appeals. On so important a point it is not for us to speculate as to what the opinion of the Supreme Court might have been had it passed directly upon it. Moreover, the court clearly stated that it expressed "no opinion on the relevancy or effect of the evidence or otherwise upon the merits."

Plaintiffs' right to be heard in a judicial tribunal resolves itself to the single question of whether or not there has been an invasion of some legal or equitable right.

The mere damage that may arise from the competition of the municipalities does not amount to an abridgement or impairment of any such right, nor does the mere making of loans and grants by the Administrator of Public Works, although he may be acting beyond the warrant of law, amount to an impairment of the legal or equitable rights of the plaintiffs. New Orleans, M. & T. R. Co. v. Ellerman, 105 U.S. 166, 174, 26 L. Ed. 1015.

In United States v. Dern, 63 App.D.C. 28, 68 F.(2d) 773, mandamus was sought to compel the Secretary of War to cancel certain lease of warehouses which were alleged to have been made contrary to law. Plaintiffs planted their right of action on the ground that they were engaged in direct competition with the lessee, and that by reason of the advantageous provisions of the alleged illegal lease agreements the lessee was able to underbid them in competing for business. We held that this gave plaintiffs no right to challenge the legality of the action of the Secretary of War in making the leases.

The lower court, in holding that plaintiffs were entitled to challenge the validity of the Administrator's acts and the constitutionality of these statutes, relied upon Frost v. Corporation Commission, 278 U.S. 515, 49 S. Ct. 235, 237, 73 L.Ed. 483. We think that case does not support plaintiffs' position. In that case the plaintiff was the holder of a license to operate a cotton gin which the court held to be exclusive as against persons not similarly licensed. The state legislature attempted to grant a privilege to certain co-operative societies, which was held void because violative of the equal protection clause of the Fourteenth Amendment. It was held that plaintiff was entitled to enjoin one who attempted to operate in competition with him under a void permit issued under the unconstitutional statute. The court said that the holder of a valid license might "resort to a court of equity to restrain the illegal operation upon the ground that such operation is an injurious invasion of his property rights." The vital distinction between that case and the instant suits is that the operation of power plants by these municipalities is not illegal, and plaintiff has no right to exclude them from any competition upon which they may see fit to enter.

These utilities have no exclusive franchises to furnish electricity to these municipalities. It is conceded that the municipalities may lawfully compete with the plaintiffs. Any damage which results to plaintiffs from such lawful competition is merely damnum absque injuria. The fact that, in furnishing the funds which will enable the municipalities to engage in such competition, the Administrator may have exceeded his authority, or may have acted under an unconstitutional statute, does not affect the situation. The thing which affects the plaintiffs is the competition, and that is lawful.

In our opinion, no legal or equitable right of plaintiffs has been invaded, and they are therefore without standing to challenge the validity of the Administrator's acts. This being so, there is no necessity for us to consider the other questions raised on these appeals.

The decree of the lower court dismissing the bills is affirmed.

GRONER, J. (concurring).

I concur in the conclusion reached on the basis of the trial court's findings of fact, by which I feel bound, namely:

That the municipalities concerned acted in the matters in question of their own free will and without coercion or solicitation by the United States or the Administrator.

Second, that there is no agreement or conspiracy between the United States and the municipalities to have the United States foster municipal ownership.

Third, that the United States has, in making the loan and grant, reserved no right to control municipal power rates, to suppress competition, or to regulate operation.

If these findings reflect the real position of the United States in the matters in issue here, then I agree that the United States is only a "buyer of bonds, and a giver of gifts," and that in the circumstances the threatened damage to plaintiffs' properties is consequential and indirect.