ANDRÉS SALAS SOLER Y OTRO, demandantes y recurrentes, *v.* SECRETARIO DE AGRICULTURA DEL E.L.A. DE PUERTO RICO, demandado y recurrido.

*Número:* R-73-149    *Resuelto:* 29 de octubre de 1974

*Olaguibeet A. López Pacheco, Arturo Aponte Pares* y *George López Keelan,* abogados de los recurrentes; *Myriam Naveira de Rodón, Procuradora General, Candita R. Orlandi,* y *Adolfo J. Vilá, Procuradores Generales Auxiliares,* abogados del recurrido.

ÉL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La Ley sobre Política Pública Ambiental de Puerto Rico, Ley Núm. 9 de 18 de junio de 1970, proveía originalmente en su Art. 4 que:

"El Estado Libre Asociado autoriza y ordena que al máximo grado posible:

(1) las normas, reglamentos y leyes del Estado Libre Asociado deberán interpretarse y administrarse de acuerdo con las políticas expuestas en esta ley, y

(2) todas las agencias del Gobierno deberán

    (A) .      .      .      .      .      .      .      .

    (B) .      .      .      .      .      .      .      .

    (C) incluir en toda recomendación o informe sobre propuestas de legislación y otras acciones gubernamentales que afecten significativamente la calidad del medio ambiente humano, una exposición detallada por un funcionario responsable sobre

(i) el impacto ambiental de la acción propuesta . . . .

Antes de hacer alguna declaración detallada, el funcionario responsable consultará y obtendrá los comentarios de alguna agencia que tenga jurisdicción por ley o por su pericia especial con respecto a cualquier impacto ambiental envuelto. . . ." (1)

El 30 de agosto de 1971 el Secretario de Agricultura aprobó un reglamento para regir la venta, distribución y aplicación comercial de venenos comerciales, (2) sin someter ante la Junta de Calidad Ambiental, 12 L.P.R.A. sec. 1129, una declaración de impacto ambiental sobre la acción propuesta.

El Instituto de Estudio Ambiental, Inc., una corporación doméstica de fines no pecuniarios, y uno de sus miembros instaron poco después una petición de *mandamus* contra el Secretario de Agricultura para que se le ordenara a éste someter la declaración de impacto ambiental a que se refiere el artículo citado de la Ley sobre Política Pública Ambiental de Puerto Rico y para que se dejase sin efecto el reglamento promulgado hasta tanto se cumpliese con la legislación vigente. Alegaron los demandantes recurrentes que los productos reglamentados se usan para el control y erradicación de plagas y que su naturaleza venenosa constituye un peligro para los ecosistemas en los cuales se utilicen.

El Tribunal Superior se negó a expedir el auto fundamentalmente a base de la falta de capacidad de los recurrentes para demandar, defensa que no había sido planteada por el Secretario. Se solicita la revisión de esta sentencia, alegándose que se incurrió en error: al determinarse que los recurrentes no cuentan con capacidad para demandar, y al no expedirse el auto.

El tema general de los criterios que deben regir la definición de las personas o entidades con capacidad para entablar

---

(1) La Ley sobre Política Pública Ambiental se enmendó, después de incoada la acción del epígrafe, por la Ley Núm. 72 de 31 de mayo de 1973 (véase, para la versión enmendada de la Ley, 12 L.P.R.A. sec. 1124(C)).

(2) 11 Boletín de Puerto Rico, Núm. 4 (por publicarse). (Expediente Núm. 1482, enmendado por el Núm. 1715, Departamento de Estado.)

litigios ha sido y continúa siendo objeto de discusión intensa. Freund estima que la materia se cuenta entre "las más amorfas en todo el dominio del derecho público" (traducción nuestra), *Hearings on S. 2097 Before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary*, 89th Cong., 2d Sess., parte 2, pág. 498 (1966). El Juez Douglas ha afirmado que "Las generalizaciones sobre la capacidad para demandar son en gran parte inservibles." (Traducción nuestra.) *Association of Data Processing Serv. Organizations* v. *Camp*, 397 U.S. 150, 151 (1970). Davis considera que "las decisiones del Tribunal Supremo [de Estados Unidos] sobre la capacidad para demandar son confusas y contradictorias y continúan en estado de desorden." (Traducción nuestra.) 3 Davis, *Administrative Law Treatise*, sec. 22.18 (Supp. 1965).

La abundante literatura sobre la cuestión, sin embargo, va aclarando aspectos vitales de la misma. Se ha ido observando, por ejemplo, que gran parte de las dificultades pasadas se han debido a la multiplicidad de funciones diversas que se le han impuesto a la doctrina: su utilización como cedazo para evitar el abarrotamiento de los calendarios y su uso como modo de excluir del ámbito de la consideración judicial asuntos cuya determinación les corresponde propiamente a otras partes del sistema gubernativo. Véase: Scott, K. E., *Standing in the Supreme Court—A Functional Analysis*, 86 Harv. L. Rev. 645 (1973).

Puede notarse también que la tendencia general es hacia la liberalización de la doctrina. Davis, *The Liberalized Law of Standing*, 37 U. Chi. L. Rev. 450 (1970); Jaffe *Standing Again*, 84 Harv. L. Rev. 633 (1971). El desarrollo de esta tendencia ha sido mucho más pronunciado en la jurisprudencia estatal que en la federal. Homburger, A., *Private Suits in the Public Interest in the United States of America*, 23 Buffalo L. Rev. 343, 390 (1974).

Se reconoce igualmente que existe una distinción básica entre las acciones que entrañan este problema: las que plantean una cuestión de interpretación de estatutos y los casos de revisión no estatutaria. Scott, K. E., *op. cit.*, 86 Harv. L. Rev. 645, 647 (1973). El caso presente pertenece a la primera categoría, la más simple, por lo que no hay que discutir las complejidades del segundo orden de litigios, ni aun siquiera las circunstancias de su aplicación o no en Puerto Rico.

De lo que se trata fundamentalmente aquí, por tanto, es de interpretar la legislación puertorriqueña aquí envuelta. El Art. 4 de la Ley sobre Política Pública Ambiental, 12 L.P.R.A. sec. 1124(C), como hemos visto, requiere con toda claridad que antes de efectuarse cualquier acción o promulgarse cualquier decisión gubernamental que afecte significativamente la calidad del ambiente, el funcionario gubernamental concernido debe someter una declaración de impacto ambiental a la instrumentalidad pública con jurisdicción sobre la propuesta. No cabe duda, a la luz del récord, que el reglamento promulgado no versa sobre productos innocuos, sin relación alguna con el ambiente. El testimonio del perito doctor Víctor Sánchez[3] sostiene ampliamente la conclusión de que el reglamento sobre venenos comerciales en controversia afecta de modo suficientemente significativo la calidad del ambiente como para exigir una declaración previa de impacto ambiental.[4] Hay que enfrentarse, por tanto, al problema de la capacidad para demandar.

El Art. 4 de nuestra Ley sobre Política Pública Ambiental deriva de la ley federal sobre el mismo tema, aprobada en 1969. 83 Stat. 852, 42 U.S.C.A. sec. 4332(C). Distinto a

[3] Profesor de Farmacología en la Escuela de Medicina de la U.P.R.; doctor en Sc. N. Universidad de París.

[4] Hernández Denton, Federico; Sánchez, Víctor y Trujillo, Maximiliano, *Los Plaguicidas en Puerto Rico: Presencia y Control*, 41 Rev. Jur. U.P.R. 187 (1972).

esta ley, sin embargo, la nuestra dispuso en 1970 lo siguiente en su Art. 19, 12 L.P.R.A. sec. 1139:

"Cualquier ciudadano podrá llevar acciones en daños y perjuicios en los tribunales de justicia contra ciudadanos particulares basados en daños que sufran por violaciones a esta ley. Esta acción civil de daños y perjuicios es independiente y diferente de los procesos administrativos que se sigan en la Junta. Igualmente cualquier ciudadano afectado por la falta de implementación de esta ley, podrá acudir al Tribunal Superior solamente para solicitar un *mandamus,* disponiéndose que lo anterior no incluye acciones de daños y perjuicios."

Se advertirá, por tanto, que nuestro estatuto va más allá que la ley de origen al disponer expresamente para el ejercicio en determinadas circunstancias de una acción pública, limitada al *mandamus,* por ciudadanos privados "afectado[s] por la falta de implementación de esta ley." Algo comparable había sucedido con otras leyes federales, (5) lo que recalca la importancia de la adición del Art. 19 a nuestra ley.

Aún queda por determinar, sin embargo, el significado de la frase "*afectado* por la falta de implementación de esta ley." Para ello debemos acudir preferentemente a nuestra propia jurisprudencia y doctrina sobre la capacidad para demandar; primeramente, porque nos enfrentamos a una disposición de ley propia, aunque dentro de un contexto general que proviene de otro foro; y, en segundo término, porque aun si se tratara, que no es el caso aquí, de la adopción prácticamente *verbatim* de un estatuto federal por nuestra Asamblea Legislativa, el historial de su aprobación o las realidades a que se dirige la ley local le puede imprimir su propio signifi-

---

(5) Véanse, por ejemplo, la "Federal Power Act", 16 U.S.C. sec. 825*l* (b) (1970); la "Interstate Commerce Act", 49 U.S.C. sec. 1(20) (1970); la "Securities Act of 1933", 15 U.S.C. sec. 77i(a) (1970); la "Federal Communications Act", 47 U.S.C. sec. 402(b)(6); la "Noise Control Act of 1972", 42 U.S.C. sec. 4911; y la "Federal Water Pollution Control Act Amendments of 1972", 33 U.S.C. sec. 1365.

cado. La aplicación mecánica de las reglas de hermenéutica constituye a menudo un procedimiento riesgoso.

*Asociación de Maestros* v. *Pérez, Gobernador Int.*, 67 D.P.R. 849 (1947), sienta la doctrina que rige el caso presente. En dicha controversia se le permitió a una asociación privada incoar una acción de *mandamus* para que se cumpliesen unas disposiciones de ley. Dijimos entonces:

"Tratándose de cuestiones de interés público, sostiene la mayoría de las autoridades que interpretan preceptos similares al nuestro, que cuando la cuestión envuelta es de interés público y el mandamus tiene por objeto conseguir la ejecución de un deber público, el pueblo es considerado como la parte especialmente interesada y el demandante no necesita probar que tiene interés especial en el resultado del caso. Basta demostrar que es un ciudadano y como tal está interesado en la ejecución y protección del derecho público." (A la pág. 851.)

La ley que controlaba el aspecto bajo discusión de dicho caso era el Art. 651 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3423, el cual dispone que el auto de *mandamus* ". . . Podrá dictarse basado en los informes de la parte beneficiada e interesada." El caso reciente de *Cerame-Vivas* v. *Secretario de Salud*, 99 D.P.R. 45 (1970) es otra instancia del modo amplio en que se ha interpretado por este Tribunal la doctrina de la capacidad para entablar litigios.

Valga señalar que los hechos en el caso presente son aún más fuertes que en *Asociación de Maestros* y en *Cerame-Vivas*. Aquí no sólo se cuenta en la ley con el Art. 19 citado, sino que, además, la intención legislativa se aclara aún más en los Arts. 3(a) y 3(c) de nuestra Ley sobre Política Pública Ambiental, que tampoco forman parte de la ley federal que sirvió de modelo para nuestro estatuto. En el Art. 3(a) se expresa que "es política continua del Gobierno del Estado Libre Asociado . . . en cooperación con las organizaciones públicas y privadas interesadas, utilizar todos los medios y medidas prácticas . . . para crear y mantener las condiciones bajo las cuales el hombre y la naturaleza puedan existir en

armonía productiva. . . ." El Art. 3 (c) reconoce a su vez "que toda persona deberá gozar de un ambiente saludable. . . ." Recuérdese, además, que el Art. 4 de la Ley sobre Política Pública Ambiental ordena en su primer párrafo que "al máximo grado posible: (1) las normas, reglamentos y leyes del Estado Libre Asociado deberán interpretarse y administrarse de acuerdo con las políticas expuestas en esta ley . . .", las cuales claramente responden a lo dispuesto en la Sec. 19 del Art. VI de la Constitución de Puerto Rico.

El Instituto de Estudio Ambiental, uno de los recurrentes, intenta servir los propósitos, según la determinación de hechos del tribunal de instancia, "de estimular una relación armónica o provechosa entre el hombre y su medio ambiente; proveer actividades que impidan daños al medio ambiente y 'acudir a los organismos administrativos y judiciales cuando sea necesario'." Uno de los miembros del Instituto, el doctor Víctor Sánchez, ha escrito extensamente sobre el uso de plaguicidas. (T.E. págs. 22–23.) El otro de los recurrentes era presidente de dicha institución al momento de la radicación del *mandamus* (T.E. pág. 17) y era a la vez dueño de una pequeña finca, habiendo utilizado en ella diversos plaguicidas. (T.E. págs. 20–23.)

▆▆ Entendemos que los recurrentes constituyen sin duda personas afectadas por la falta de la implementación de la ley dentro del significado del Art. 19 de nuestra Ley sobre Política Pública Ambiental. Para demostrar que se es una persona afectada por una acción gubernamental bajo nuestro tipo de estatuto no hay necesidad de demostrar daño económico. *Association of Data Processing Serv. Organizations* v. *Camp*, supra; *Barlow* v. *Collins*, 397 U.S. 159 (1970). El daño puede basarse en consideraciones ambientales, recreativas, espirituales o aun simplemente estéticas. Homburger, *op. cit.*, 23 Buffalo L. Rev. 343, 393 (1974). Nuestra decisión en este sentido no quiere decir que la puerta está abierta de par en par para la consideración de cualquier caso que

desee incoar cualquier ciudadano en alegada protección de una política pública. Debe examinarse el nexo entre el interés del ciudadano y la acción radicada; el hecho de que los deman- dantes puedan representar adecuadamente el interés público y asumir su debida defensa; si el caso es justiciable o si puede montar a una intervención indebida del poder-judicial con el funcionamiento de otra parte del gobierno; si la controversia está madura para decisión, y si el litigio en cuestión constituye un medio adecuado para plantear en su debida dimensión y particularidad el problema de que se trate. Tan sólo parte de estos criterios son derivables de la doctrina de la capacidad para demandar, que tan a menudo se confunde con otras nor- mas. No es necesario, por supuesto, proceder al deslinde de teorías en este caso ya que, como hemos indicado, la actual controversia gira en esencia sobre un problema de interpreta- ción estatutaria que no abarca la totalidad de variantes de la doctrina referente a la capacidad para demandar, siendo indis- pensable tan solo referirnos a parte de ella como trasfondo útil para precisar la intención legislativa en este caso.

. El caso de autos cumple no sólo con las normas sentadas en *Asociación de Maestros* y en *Cerame-Vivas,* sino con las reglas que privan en otras jurisdicciones en casos parecidos o aun más difíciles. En *Environmental Fund, Incorporated* v. *Hardin,* 428 F.2d 1093 (D.C. Cir. 1970), por ejemplo, los peti- cionarios eran unas asociaciones de fines no pecuniarios orga- nizadas, como el Instituto recurrente, para dedicarse a activi- dades relacionadas con la protección del ambiente. Su demanda no versaba sobre una cuestión procesal, como aquí, sino que iba más allá y solicitaba que el Secretario de Agricultura pro- hibiese el uso de determinado plaguicida. El estatuto envuelto también le concedía el poder de demandar "a cualquier per- sona adversamente afectada" por una acción del Secretario. No se demostró daño a propiedad alguna de los peticionarios. El tribunal falló a favor de los peticionarios, resolviendo que los "Consumidores de productos y servicios regulados poseen

capacidad para proteger el interés público en un sistema regulativo promulgado para su beneficio" y que "Además, el interés de los consumidores en la protección ambiental puede estar debidamente representado por una asociación de personas con un interés organizativo en el problema." (Traducción nuestra, 1097.) Sobre la cuestión de los plaguicidas, véase también: *Environmental Defense Fund* v. *Environmental Protection Agency*, 465 F.2d 528 (D.C. Cir. 1972).

En *Minnesota Public Interest Research Group* v. *Butz*, 358 F.Supp. 584 (D. Minn. 1973), se fue también más lejos que lo que se pretende aquí, tratándose en dicho caso de forzar al Secretario de Agricultura de Estados Unidos a que sometiese la declaración de impacto ambiental requerida por el estatuto federal que sirvió de modelo al nuestro, el cual, sin embargo, como se ha señalado, no cuenta con una autorización expresa como la sancionada por nuestra Asamblea Legislativa para la radicación por personas privadas de acciones públicas del orden envuelto. La entidad demandante era una corporación de fines no pecuniarios compuesta de estudiantes. Algunos de ellos habían utilizado las facilidades forestales cuyo carácter se deseaba mantener vía la demanda. El tribunal resolvió que la entidad tenía capacidad para demandar; el Secretario venía obligado a radicar la declaración de impacto ambiental a que se refiere el estatuto; y, mientras tanto, que procedía prohibir la continuación de la acción administrativa. El Tribunal Supremo de los Estados Unidos ha trascendido también de hecho a *Sierra Club* v. *Morton*, 405 U.S. 727 (1972) y casos anteriores sobre el particular en *United States* v. *Scrap*, 412 U.S. 669 (1973).

En el derecho de algunos otros países la tendencia hacia una liberalización creciente de las oportunidades de demandar es igualmente marcada. Rivero, Jean, *Droit Administratif*, Dalloz, 1960, pág. 203; Waline, M., *Droit Administratif*, Sirey, 8ᵉ ed., 1959, secs. 756 *et seq.*

█ Queda, por último, por resolver si el hecho de que la ley limite las acciones públicas al recurso de *mandamus* constituye un impedimento en este caso para la expedición del recurso. No lo constituye.[6] La expedición del auto en el presente caso no representa una intervención indebida del poder judicial en las atribuciones de otras ramas del gobierno. La ley impone un claro deber público y no existe impedimento para exigir su observancia en la referida doctrina o en otras mencionadas aquí.

*Se revocará la sentencia del tribunal de instancia y se le ordenará al señor Secretario de Agricultura que someta ante la Junta de Calidad Ambiental la declaración de impacto ambiental requerida por el Art. 4(C) de la Ley Núm. 9 de 18 de junio de 1970, según enmendada. Se dejará a su vez sin efecto el Reglamento de Mercado Núm. 4 (Revisado) promulgado a su amparo hasta tanto se cumpla con todas las disposiciones de la Ley sobre Política Pública Ambiental.*

---

(6) Sobre la naturaleza del auto de *mandamus*, véase la opinión del Juez Asociado, Señor Rigau, en *P.P.D.* v. *Ferré, Gobernador,* 98 D.P.R. 338, 462 *et seq.*