PEDRO J. SOLÍS, ETC., demandantes y recurrentes, *v.* MUNI-CIPIO DE CAGUAS, demandado y recurrido.

*Número:* RE-86-441    *Resuelto:* 9 de diciembre de 1987

*Luis M. Escribano Díaz,* abogado de los recurrentes; *Carmen Matilde MacLean,* abogada del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Nos toca revisar una escueta sentencia del Tribunal Superior, Sala de Caguas que, de sostenerse, tiene el efecto de revocar, dejar sin efecto y alterar el estado de Derecho sobre la capacidad jurídica para demandar que hemos uniforme-

mente seguido durante los últimos cuarenta años. *Asociación de Maestros* v. *Pérez, Gobernador Int.*, 67 D.P.R. 848 (1947).

Lo anterior sin que en la referida sentencia desestimatoria de la reclamación de la Unión Bonafide de Empleados Municipales (en adelante Unión) y su capítulo de Caguas (en adelante Municipio) entablada contra el Municipio de Caguas se cite autoridad alguna para tan nefasto resultado. Veamos los hechos.

Las asociaciones demandantes, por conducto de su presidente, Sr. Pedro J. Solís, presentaron una acción civil donde alegaban y suplicaban lo siguiente:

1. Pedro J. Solís es Presidente de la Unión Bonafide de Empleados Municipales de Puerto Rico (UBEMPR), la Unión Bonafide de Empleados Municipales, Capítulo de Caguas (UBEMCC) es una asociación de empleados certificada por el Secretario del Trabajo bajo las disposiciones de la Ley Número 139 de 30 de junio de 1961 (3 L.P.R.A. 755), y está afiliada a la primera.

2. El Municipio de Caguas es una corporación política y jurídica, al amparo de la Ley Municipal (21 L.P.R.A. 2001 y sig.) autorizada a demandar y a ser demandada.

3. La Ley 139, *supra*, establece en lo pertinente, en la Sección (a) (3 L.P.R.A. 755(a)), lo siguiente:

"Los empleados de los municipios . . . podrán autorizar por escrito al alcalde del municipio en que trabajen para que descuente o haga descontar de sus salarios la cantidad necesaria para el pago de las cuotas que les corresponda como miembros de tal agrupación de servidores públicos. El alcalde hará figurar en las nóminas el importe de las cuotas autorizadas, deduciéndolas del pago de los salarios de los empleados que así lo hayan autorizado por escrito . . . ."

4. Varios empleados de la demandada suscribieron las correspondientes autorizaciones de descuentos de cuotas de sus salarios y la demandada se niega a cumplir con el mandato de la ley al no hacer tales descuentos.

5. La UBEMPR y la UBEMCC no tienen otros ingresos que los derivados de las cuotas que aportan sus afiliados y por ende, los servicios que están obligadas a dar a sus afiliados y hasta la existencia misma de estas entidades está en precario, de no hacerse tales deducciones.

6. Por disposición expresa y clara del estatuto referido, la organización de una asociación de empleados municipales como la aquí demandante, constituye un ejercicio del derecho constitucional a organizarse.

7. La acción u omisión de la demandada, representa entonces una cortapisa al ejercicio de un derecho constitucional básico de tal magnitud que puede cancelarlo en la práctica.

8. Los actos u omisiones de la demandada ocasionan daños inmediatos e irreparables a la demandante, adicionalmente, en razón de que tiene que ofrecer unos servicios a sus afiliados del Municipio de Caguas sin contar con el dinero para ello; todo lo cual se estima en daños por un monto de Cinco Mil Dólares ($5,000.00).

EN VIRTUD DE TODO LO CUAL, muy respetuosamente solicitamos del Honorable Tribunal se sirva declarar con lugar esta Demanda y en su consecuencia ordene a la Demandada a deducir de los salarios de los afiliados a la UBEMCC que lo han autorizado así, la suma correspondiente a las cuotas a favor de la UBEMCC, con cualquier otro procedimiento que en derecho proceda. *Exhibit* 2, págs. 4–5.

El Municipio presentó Moción de Desestimación en la que, sin citar jurisprudencia u otro tipo de autoridad, sostuvo que la Ley Núm. 139 de 30 de junio de 1961 (3 L.P.R.A. sec. 755) "no concede en forma alguna capacidad jurídica ni derecho de representación a la organización [*bona fide*] para llevar acciones judiciales por sí, ni en representación de sus miembros, limitando sus facultades para designar a un oficial para recibir el importe de los descuentos autorizados por los empleados, luego de cumplir con otros requisitos impuestos por la misma ley". *Exhibit* 3, pág. 6. Sostuvo que los únicos que podían reclamar eran los empleados individualmente.

El tribunal acogió el planteamiento y desestimó la demanda. Revisamos mediante orden para mostrar causa. La comparecencia del Municipio no nos mueve a alterar el resultado intimado.

I

Reiteradamente hemos expresado en nuestras decisiones desde *Asociación de Maestros* v. *Pérez, Gobernador Int.*, ante, que la doctrina sobre capacidad jurídica para entablar demanda contra las agencias y funcionarios gubernamentales, debe ser interpretada amplia y liberalmente. *Hernández Agosto* v. *Romero Barceló*, 112 D.P.R. 407 (1982); *P.S.P.* v. *E.L.A.*, 107 D.P.R. 590 (1978); *Salas Soler* v. *Srio. de Agricultura*, 102 D.P.R. 716 (1974).

La Asociación de Maestros (en adelante Asociación) era una organización integrada en aquella época por el noventa por ciento (90%) de los maestros dedicados a la enseñanza del sistema educativo del país; desde su fundación había gestionado que la enseñanza en las escuelas públicas se llevara a cabo en español y, a la vez, que se intensificara la enseñanza del idioma inglés. En protección de dichos intereses entablaron acción contra el gobernador para que se pusiera en ejecución un proyecto de ley aprobado por la Legislatura y vetado por el gobernador, que establecía la enseñanza del español en nuestras escuelas públicas. El tribunal desestimó la petición de *mandamus* por el fundamento de que la Asociación no era una parte realmente interesada en la materia objeto del recurso. Al revocar dicha determinación, en *Asociación de Maestros* v. *Pérez, Gobernador Int.*, ante, págs. 851–852, resolvimos que:

> Se arguye por los demandados que la Asociación de Maestros no tiene interés especial en este asunto; que acaso podrían tenerlo los maestros que son los que han de enseñar en el idioma que se adopte, pero que la peticionaria es una per-

sona jurídica distinta de los miembros que la componen y que por consiguiente no puede, ni siquiera asumir, la representación de los maestros en este asunto.

Convendríamos con los demandados si se tratase en el presente caso de una cuestión de interés privado. No cabe duda, sin embargo, que la selección del idioma que ha de servir de vehículo a la enseñanza pública de un país, es una cuestión de interés público. También lo es que las leyes se pongan en ejecución. Tratándose de cuestiones de interés público, sostiene la mayoría de las autoridades que interpretan preceptos similares al nuestro, que cuando la cuestión envuelta es de interés público y el mandamus tiene por objeto conseguir la ejecución de un deber público, el pueblo es considerado como la parte especialmente interesada y el demandante no necesita probar que tiene interés especial en el resultado del caso. Basta demostrar que es un ciudadano y como tal está interesado en la ejecución y protección del derecho público. 1942 *Annual Survey of American Law*, pág. 871; *Board of Social Welfare* v. *Los Angeles County*, 162 P.2d 627 (Cal. 1945); *State* v. *Ware*, 13 Or. 380; *State ex rel. Passer* v. *County Bd.*, 213 N.W. 545 (Minn. 1927), 52 A.L.R. 916; *State ex rel. Schwartzkopf* v. *Brainerd*, 121 Minn. 182, 141 N.W. 97, 46 L.R.A. (N.S.) 9; monografía en 98 Am. St. Rep. 865–66.

Los casos de *Baltimore Retail Liq. P. Stores Ass'n.* v. *Kerngood*, 189 A. 209 (Md. 1937), 109 A.L.R. 1253 y *Funeral Directors Ass'n. etc.* v. *Board of Fnrl. D.&E.*, etc., 154 P.2d 39 (Cal. 1944), invocados por los apelados, no son pertinentes porque en ellos el objeto del mandamus es un derecho privado y los respectivos demandantes no tenían el interés especial requerido por la ley. Quizás podría concederse que los casos federales de *United States* v. *Mellon*, 32 F.2d 415 (App. D.C. 1929) y *United States* v. *Dern*, 68 F.2d 773 (App. D.C. 1934) invocados también por los demandados, tienden a sostener su tesis, pero ésa es la regla de la minoría como se dice en la monografía en 98 Am. St. Rep., *supra*, en High, *Extraordinary Legal Remedies*, sec. 431, pág. 420 (3ra. ed. 1896) y en 1942 *Annual Survey of American Law*, supra, y no estamos dispuestos a seguirla.

■ Es significativo que en dicho caso se encontró que la Asociación tenía interés especial y directo para invocar los derechos de sus socios sobre una materia que no afectaba directamente los intereses económicos y gremiales de la organización y sus miembros.(1) Tampoco estaba implicada la protección de los derechos constitucionales de la organización.(2) A pesar de ello reconocimos su capacidad jurídica para demandar.

En *Hernández Agosto* v. *Romero Barceló*, ante, pág. 414, expusimos en forma más específica, los criterios siguientes:

> Es indispensable que el promovente de la causa de acción alegue haber sufrido un claro y palpable daño. *Fund. Arqueológica* v. *Depto. de la Vivienda*, supra. El daño debe ser real, inmediato y preciso; no puede ser abstracto o hipotético. *Warth* v. *Seldin*, supra; *Gladstone, Realtors* v. *Village of Bellwood*, supra. La causa de acción debe surgir bajo el palio de la constitución o de una ley. *Fund. Arqueológica* v. *Depto. de la Vivienda*, supra; *Salas Soler* v. *Srio. de Agricultura*, supra; y debe establecerse una conexión entre el daño y la causa de acción ejercitada. *Village of Arlington Heights* v. *Metropolitan Housing Corp.*, supra; véase, además, *Should Congress Defend its Own Interest Before The Court*, 33 Stan. L. Rev. 715 (1981).

En el caso ante nos, la organización demandante trata que se reconozcan los derechos que específicamente establece la ley que autoriza su creación. La Sec. 1 de la ley, según enmendada por la Ley Núm. 89 de 7 de julio de 1985 (3 L.P.R.A. sec. 755(a)), provee que:

---

(1) Hemos reconocido que la capacidad para demandar va más allá del mero interés o daño económico. *Salas Soler* v. *Srio. de Agricultura*, 102 D.P.R. 716, 723 (1974).

(2) Como lo estaba en *Rodríguez* v. *Srio. de Instrucción*, 109 D.P.R. 251 (1979), donde reconocimos *sub silentio* la capacidad de la Federación de Maestros para entablar una acción judicial en beneficio de sus derechos constitucionales y los de sus miembros.

Los empleados de los municipios del Estado Libre Asociado de Puerto Rico que, en el ejercicio de sus derechos constitucionales, se organicen en una agrupación *bona fide* de servidores públicos con fines de promover su progreso social y económico y su bienestar general, fomentar y estimular una actitud liberal y progresista hacia la administración pública y promover la eficiencia en los servicios públicos, previamente certificada como tal agrupación *bona fide* por el Secretario del Trabajo y Recursos Humanos de Puerto Rico, podrán autorizar por escrito al alcalde del municipio en que trabajen para que descuente o haga descontar de sus salarios las cantidades necesarias para el pago de las cuotas, ahorros y préstamos personales que vengan obligados a satisfacer como miembros de tal agrupación de servidores públicos. El alcalde hará figurar en las nóminas por conceptos separados el importe de los descuentos autorizados, deduciéndolos del pago de los salarios de los empleados que así lo hayan autorizado por escrito. La cuota, ahorros y cantidad para el pago de préstamos personales a descontarse del salario de cada empleado será la que certifique el secretario de la agrupación de servidores públicos correspondiente, siempre y cuando que no sea irrazonable, confiscatoria del salario o discriminatoria, entendiéndose por esto que sea igual para todos los empleados, en términos absolutos o en términos de determinado tanto por ciento de sus salarios.

■ Sin prejuzgar los méritos de la demanda y de las defensas que pueda levantar el Municipio, la reclamación en este caso es dual, de un lado el derecho de los empleados a que se descuenten las cuotas y por otro lado el de la Asociación a recibir dichas cuotas. Ambas situaciones plantean un interés especial revestido de interés público.[3] Precisamente el derecho a que se descuenten y reciban cuotas es la piedra angular del reconocimiento que a las agrupaciones de esta índole les hace el estatuto por con-

---

[3] Contrarias a la presente en *Fund. Arqueológica v. Depto. de la Vivienda*, 109 D.P.R. 387 (1980), en que solamente estaban involucrados unos intereses privados.

ducto de la autorización del Secretario del Trabajo y Recursos Humanos. Como señalamos en *Plan Bienestar Salud v. Alcalde Cabo Rojo*, 114 D.P.R. 697, 702 (1983),[4] ". . . es dudoso cuestionar la facultad de los empleados de limpieza de Cabo Rojo de gestionar la negociación de la contratación concernida a través de entidades a las que estén afiliados". Aquí ni siquiera podemos hablar en términos de que no es dudoso el interés, por el contrario el interés es manifiesto. *P.S.P.* v. *E.L.A.*, ante, pág. 590.

■ De las alegaciones se desprende que las actuaciones de los funcionarios del Municipio configuran daños económicos a la Unión sobre el interés de sus miembros, protegido por una disposición legislativa. Por esto, y a tenor con lo dispuesto en la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la Unión puede demandar por sí y en beneficio de sus miembros para reclamar los descuentos requeridos por la Ley Núm. 89, *supra*.

A tenor con las alegaciones, el asunto es uno que afecta el interés económico y especial de la entidad y sus miembros; hay una conexión entre los daños causados y la acción del Municipio. De ser necesario el Municipio podrá, a través del mecanismo de descubrimiento de prueba, obtener el nombre de los empleados directamente afectados.

*Se expedirá el auto, se revocará la sentencia recurrida y se declarará sin lugar la Moción de Desestimación del Municipio de Caguas.*

---

[4] En este caso no se plantea ni se discute la capacidad de estas agrupaciones para demandar. Véase, asimismo, *Asoc. Auténtica Empl.* v. *Municipio de Bayamón*, 111 D.P.R. 527 (1981).