Miranda1 De Hostos, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se apela una sentencia dictada sumariamente por el Tribunal de Primera Instancia, Sala Superior de San Juan, la cual desestimó la demanda presentada por el apelante Hon. Víctor García San Inocencio y otros, contra los apelados Hon. Pedro Rosselló González, Gobernador de Puerto Rico y otros.
Inconforme, el apelante acude ante nos alegando la comisión de varios errores que se resumen a: primero, que erró el tribunal de instancia al resolver sumariamente la controversia, aplicando la Regla *.Z.Z de Procedimiento Civil: y segundo, que incidió el foro apelado al resolver que el apelante no tenía legitimación activa para representar los intereses del Partido Independentista Puertorriqueño (PIP) para solicitar los remedios que requirió.
*1224 Por los siguientes fundamentos, se confirma la sentencia apelada.
I
Los hechos que dan lugar al presente recurso se relatan a continuación.
El 3 de enero de 1997, el Honorable Gobernador de Puerto Rico creó el Nuevo Concilio de Infraestructura (Concilio), mediante la Orden Ejecutiva Núm. 4, el cual está formado por agencias primarias, reguladoras y fiscales.
Las agencias primarias están integradas por la Autoridad de Carreteras (AC); Autoridad de Energía Eléctrica (AEE); Autoridad de Acueductos y Alcantarillados (AAA); Autoridad de Desperdicios Sólidos (ADS); Autoridad de los Puertos (AP); Autoridad de Edificios Públicos (AEP); Autoridad de Teléfonos (AT) y el Departamento de Transportación y Obras Públicas (DTOP).
Las agencias reguladoras son: el Departamento de Recursos Naturales y Ambientales (DRNA), la Junta de Planificación (JP); la Junta de Calidad Ambiental (JCA); la Oficina Estatal de Preservación Histórica (OEPH) y el Instituto de Cultura Puertorriqueña (ICP). Las agencias fiscales, el Banco Gubernamental de Fomento (BGF) y la Oficina de Gerencia y Presupuesto (OGP).
El Secretario de la Gobernación forma parte del Concilio y el Secretario de DTOP tiene las funciones de Presidente. Entre sus deberes se le asignaron el someterle al Gobernador un informe mensual sobre el progreso de las labores del Concilio y la orientación a la comunidad sobre el alcance y los beneficios de los proyectos de infraestructura.
El presupuesto del Concilio se subvenciona con aportaciones de las agencias primarias, en proporción a la magnitud de sus programas de mejoras capitales. El presupuesto anual será sometido a la OGP para su aprobación mediante legislación y se utilizará la estructura administrativa de la AC para establecer los trabajos del Concilio.
El propósito principal del Concilio, es promover la investigación y el desarrollo de proyectos de infraestructura, coordinadamente con las universidades públicas y privadas y fomentar la transferencia de tecnología en todos aquellos proyectos que requirieran una participación significativa de recursos externos.
Otros objetivos que intenta alcanzar el Concilio son: establecer prioridades para el desarrollo de proyectos de infraestructura y coordinarlos de manera tal que promuevan mayores beneficios a la economía del país; realizar una campaña en los medios de comunicación dirigida a promover la inversión en la infraestructura; crear un "Web Site" del Concilio en la "Internet" para divulgar los programas de mejoras capitales, los procesos de participación de los ciudadanos y los resultados de las subastas; y evaluar la iniciativas privadas de infraestructura no solicitadas al gobierno para luego hacer recomendaciones al Gobernador.
El Presidente del Concilio compareció el 28 de febrero de 1997, ante la Comisión de Hacienda de la Cámara de Representantes (Comisión) de la cual formaba parte el apelante, para explicar las funciones, objetivos y organización de la entidad que se le ordenó dirigir. El 19 de mayo de 1997, el Presidente del Concilio explicó públicamente los términos de la campaña educativa sobre la construcción Superacueducto que el Concilio estaba realizando e indicó que el presupuesto publicitario sobre este asunto ascendía a $375,000.00 y que sería subvencionado mediante aportaciones de las agencias primarias.
El apelante le requirió al Presidente del Concilio en mayo de 1997, más información sobre la campaña educativa y la certificación de los gastos incluidos. Contestando tal requerimiento el Presidente del Concilio le envió el 30 de mayo de 1997, una carta con la información solicitada. En la misma se le informaba, que la campaña educativa era la primera de una serie de orientación pública, sobre los proyectos de infraestructura que realizaban las agencias del Concilio y que se relacionaban con servicios de transportación, energía eléctrica, acueductos y alcantarillados, edificios públicos, desperdicios sólidos, telecomunicaciones y puertos.
*1225 Cumpliendo con la encomienda que le fue asignada, el Concilio había identificado 44 proyectos estratégicos, entre los cuales por lo menos 15, requerían un programa informativo debido a su complejidad. Entre estos proyectos se encontraba el Superacueducto, el Tren- Urbano y la Autopista del Noreste.
El apelante en su capacidad de Portavoz de la Minoría por el PIP en la Cámara de Representantes, el 6 de junio de 1997 presentó una demanda ante el Tribunal de Primera Instancia, solicitándole que declarara inconstitucional la Orden Ejecutiva que creó el Concilio y .que emitiera una orden de injunction preliminar y permanente.
Comenzando con el trámite legal, el tribunal de instancia señaló una conferencia con antelación a la vista sobre el injunction y en ésta, la parte apelada solicitó la desestimación de la demanda alegando que el apelante no tenía legitimación activa para incoar la reclamación judicial.
El foro apelado considerando los escritos presentados por ambas partes, atendió la moción como una solicitud de sentencia sumaria y acogió favorablemente el planteamiento de desestimación, por falta de legitimación activa.
Inconforme el apelante con dicho dictamen, acude ante nos.
II
A la luz de los hechos antes esbozados analicemos el derecho aplicable.
El apelante alega como primer error, que incidió el foro de instancia al resolver sumariamente la controversia bajo la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A., Ap. III.
No le asiste la razón ni el derecho.
La Regla 10.2 de Procedimiento Civil, supra, establece, que si en una moción de desestimación se plantea como defensa, que la demanda no expone una reclamación que justifique concesión de un remedio y se expusieran materias no contenidas en la alegación impugnada y no fueran excluidas del tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria. La conversión de una moción de desestimación en una sentencia sumaria es discrecional del tribunal de instancia y puede ocurrir cuando el promovente o el promovido someten materia que no formó parte de las alegaciones, pero facilita la disposición del asunto ante su consideración. Torres Capeles v. Rivera Alejandro, opinión del 30 de mayo de 1997, 97 J.T.S. 77, pág. 1091.
En cuanto a este error, a las partes se le concedió oportunidad para presentar sus posiciones por escrito y de éstas surge incluyendo las alegaciones de la demanda, que la reclamación no exponía hechos que justificaran la concesión de un remedio. El foro apelado actuó dentro del ejercicio de su discreción y con corrección jurídica, al disponer sumariamente de la controversia, por lo que concluimos que el primer error no fue cometido.
III
El apelante también señala, que erró el tribunal de instancia al resolver que el apelante carecía de legitimación activa para presentar su reclamación.
El error no fue cometido, por los siguientes fundamentos.
Todo demandante en una causa de acción, tiene que demostrar que tiene legitimación activa para que la controversia pueda ser adjudicada. Para ello, es esencial que demuestre: (1) que ha sufrido un daño preciso, real e inmediato y no hipotético ni abstracto; (2) que existe conexión entre el daño sufrido y la causa de acción ejercitada; y (3) que ésta, surge al amparo de la Constitución o de alguna ley. García Oyola v. J.C.A., opinión de 21 de febrero de 1997, 97 J.T.S. 25, pág. 662; Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716, 724 (1974). (Casos citados).
Los criterios para conceder legitimación activa, según expresado por nuestro más alto foro, cuando *1226 se vindican derechos de terceros, son más rigurosos.
Para el caso particular de agrupaciones o colectividades se requiere: que los miembros tengan legitimación activa para demandar a nombre propio; que los intereses que se pretenden proteger están relacionados con los objetivos de la organización y la reclamación; y que el remedio solicitado no requiere la participación individual de los socios del pleito. Hernández Torres v. Hernández Colón, opinión de 31 de enero de 1992, 92 J.T.S. 16, pág. 9195; Colegio de Opticos v. Vani Visual Center, 124 D.P.R. 559, 566 (1989).
A los legisladores se le ha reconocido que por condición de miembros de la Asamblea Legislativa, tienen capacidad jurídica para vindicar sus prerrogativas y funciones constitucionales. Por lo tanto, un legislador tiene legitimación activa cuando reclama un derecho personal a base de un daño que ha sufrido vinculado a su función legislativa. También tendría legitimación activa como representante oficialmente nombrado por la Asamblea Legislativa, para impugnar una acción ejecutiva y para vindicar derechos legislativos, conforme a una autorización expresa del cuerpo legislativo mediante resolución debidamente aprobada. Hernández Torres v. Hernández Colón, opinión del 16 de septiembre de 1992, 92 J.T.S. 123, pág. 9932. (Casos citados).
Sin embargo, el Tribunal Supremo ha expresado, que un legislador no tiene legitimación activa para instar acciones en representación de sus votantes o del interés público a base de un perjuicio general. Se trataría de situaciones en las cuales, como el legislador no pudo convencer a sus colegas de su posición en el foro legislativo, utiliza el foro judicial para adelantar sus propósitos. La intervención judicial en esos casos afectaría el delicado principio de separación de poderes y no se debe permitir el trasladar el debate legislativo al foro judicial. Noriega Rodríguez v. Hernández Colón, opinión de 18 de marzo de 1994, 94 J.T.S. 11, 652. (Casos y autoridades citadas).
Finalmente, es un requisito constitucional en nuestro sistema republicano de gobierno, que las minorías tengan derecho a participar en las etapas esenciales y significativas de los procesos investigativos o deliberativos de una comisión legislativa. Sin embargo, un legislador no puede acreditar su legitimación activa con sólo alegar que sus prerrogativas legislativas han sido afectadas por no permitirle fiscalizar adecuadamente la obra legislativa, si no se le ha privado de su derecho a ejercer su voto y de tratar de convencer a los demás de su posición. Noriega Rodríguez v. Hernández Colón, supra, pág. 11652; Silva v. Hernández Agosto, 118 D.P.R. 45, 74 (1986).
IV
Una vez discutidos los aspectos de derecho aplicables al recurso ante nuestra consideración, analicemos los hechos en controversia sobre la legitimación activa del apelante.
Conforme el dictamen del foro de instancia y de un examen de los documentos presentados surge, que el apelante no tenía legitimación activa pues no probó que la creación del Concilio le causara daño alguno vinculado con sus prerrogativas legislativas. De éstos se desprende, que lejos de habérsele menoscabado sus prerrogativas legislativas como miembro de Comisión y como Portavoz de Minoría del PIP, tuvo oportunidad de fiscalizar el informe que el Presidente del Concilio ofreció el 28 de febrero de 1997 en igualdad de condiciones que los otros legisladores. Además, el apelante para el descargo de su responsabilidad legislativa le requirió al Presidente del Concilio información adicional, la cual le fue provista el 30 de mayo de 1997. Era en dicho foro legislativo, donde se le garantizaron sus prerrogativas como Portavoz de la Minoría, que le competía el convencer a sus colegas de su posición y no en el foro judicial.
En cuanto a la alegación que ahora se presenta de que el apelante compareció en representación del PIP, basta con señalar, que no surge de la demanda alegación alguna sobre tales extremos. Por lo tanto, el tribunal de instancia resolvió correctamente al desestimar la demanda cuando el PIP no fue parte del pleito y, por ende, no se alegó haber sufrido daño ni solicitó remedio alguno.
Ante tales circunstancias, concluimos que el tribunal de instancia no cometió el error aludido.
V
Por los fundamentos que anteceden, se confirma la sentencia apelada.
*1227 Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General