# 98 DTA 215

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

SANTOS LOPEZ BERRIOS
Recurrente

v.

JUNTA DE PLANIFICACION DE PUERTO RICO
Recurrida

Núm. KLRA-98-00252

-----------------------------------------------------

MIGUEL COLON, JOSE LABORDE Y ELIGIO COLON
Partes Recurrentes

v.

JUNTA DE PLANIFICACION
Parte Recurrida

Núm. KLRA-98-00319

Consulta Núm. 97-41-0802-JPU

San Juan, Puerto Rico, a 20 de agosto de 1998

Panel integrado por su Presidente, el Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Los peticionarios de epígrafe presentaron las solicitudes de revisión objeto de este dictamen ante este Foro apelativo, recurriendo de la Resolución de 4 de marzo de 1998 emitida por la Junta de Planificación de Puerto Rico, mediante la cual se aprobó la consulta número 97-41-0802 JPU para la ubicación de un proyecto comercial en el Barrio Quebradillas del Municipio de Barranquitas. Se desestiman los mismos porque los recurrentes adolecen de legitimación activa para interponer estos recursos. Veamos los hechos pertinentes.

### I

Miguel Rivera Bermúdez, a través de Angel Nieves Fuentes y Edwin López, sometió ante la Junta de Planificación, en adelante Junta, una consulta (Consulta 97-41-0802-JPU) para la ubicación de un proyecto comercial, consistente en la construcción de un supermercado de 30,000 pies cuadrados en una finca agrícola de 8.0146 cuerdas de terreno situada en la Carretera Estatal Núm. 152, Km. 7.6, Barrio Quebradillas de Barranquitas. ■ Celebrada vista pública se aprobó la consulta para la ubicación del proyecto mediante Resolución de 4 de marzo de 1998, notificada el día 18 siguiente. Se estableció que *"[l]a consulta propuesta está en armonía con los Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico."* Fueron consultadas la Autoridad de Carreteras y Transportación, la Autoridad de Acueductos y Alcantarillados, el Departamento de Recursos Naturales y Ambientales, el Instituto de Cultura, la Junta de Calidad Ambiental, el Departamento de Agricultura, quien objetó el proyecto propuesto y recomendó no autorizar el mismo. Además, fueron oídos en la vista celebrada el Lcdo. William Estrella, en representación de tres comerciantes de Barranquitas; el alcalde del Municipio de Barranquitas, Hon. Francisco López López, quien endosó la consulta; el señor José Laborde, quien es dueño de tres farmacias y alegó que con la existencia del antes referido supermercado habría un *"overlapping"* de productos; el señor Miguel Colón, administrador del Centro Comercial San Cristóbal de Barranquitas y el señor Emenelio Berríos en representación de la empresa A. Cordero Badillo.

Se sometió una certificación del agrónomo señor José A. Casiano Ortiz, quien indicó que dicha finca no había tenido actividad agrícola alguna en un sinnúmero de años. Además, un vecino del lugar, señor Alfredo Berríos, señaló que durante los últimos 35 años no se había cultivado nada en dicha finca. El señor Santos López Berríos, quien no participó en la antes mencionada vista pública, solicitó reconsideración en calidad de dueño del Supercolmado y Carnicería López que colinda por el oeste con dicho proyecto. En su solicitud de reconsideración alegó que:

*"En ninguna de las resoluciones que la Junta endosó se tomó en consideración el daño económico que el Supercolmado y Carnicería López va a sufrir, y por ende el futuro de los 7 empleados del Supercolmado."*

*No se mencionó (en las Determinaciones de Hechos, pág. 1) que el terreno y estructura del Supercolmado López, propiedad de Santos López Berríos, están colindantes por la parte sur con el propuesto proyecto.*

*No se tomó en consideración que el Supercolmado y Carnicería López tuvo una remodelación hace apenas 9 meses para ampliar y mejorar la carnicería y el Supercolmado a un costo de 200,000.00 dólares, los cuales fueron provistos por la Cooperativa de Crédito y Ahorro de Barranquitas, mediante un prestámo [sic] Hipotecario, el cual no se podrá pagar si la propuesta núm. 97-441-0802-JPU se hiciese realidad.*

*No se tomó en consideración la capacidad del Supercolmado y Carnicería para brindar los servicios de compra necesarios para la comunidad de Quebradillas. El colmado y Carnicería tienen apróximadamente 6,500 pies cuadrados, contando tres plantas que compone el edificio, y tenemos*

\

*sobre 2,000 diferentes artículos más variedad en artículos de primera necesidad que las grandes cadenas de supermercado."*

La Junta, mediante Resolución de 1 de abril de 1998, archivada en autos el 8 siguiente, reafirmó su Resolución anterior aprobando la consulta núm. 97-41-0802-JPU.

Los señores Miguel Colón, José Laborde y Eligio Colón también solicitaron reconsideración de la Resolución de la Junta. Esta mediante dictamen emitido el 16 de abril de 1998, notificado el 13 de mayo siguiente, reafirmó su Resolución anterior. Inconforme, el peticionario, Santos López Berríos recurre mediante solicitud de revisión ante nos (Núm. KLRA-98-00252) y sostiene que la Junta erró al:

*"1...aprobar la consulta a pesar de la oposición a la misma por parte del Departamento de Agricultura de Puerto Rico.*

*2...aprobar la Consulta a pesar de la oposición anteriormente expresada por el Departamento de Comercio de Puerto Rico al desarrollo de un proyecto comercial para la venta de alimentos en la finca en cuestión.*

*3...apreciar la prueba presentada por las partes favorecedoras de la propuesta.*

*4...al no ceñirse a las exigencias del mandato legislativo al resolver la consulta.*

*5...al descartar la recomendación del Oficial examinador, señor Efrén B. Lugo Pérez, de que se denegara la consulta, y, por el contrario, expedir resolución aprobatoria."*

La Junta compareció y sostiene que el peticionario, Santos López Berríos, no tenía legitimación activa para incoar su recurso de revisión ante este Foro apelativo.

Los peticionarios Miguel Colón, José Laborde y Eligio Colón, también, recurrieron ante nos mediante solicitud de revisión (Núm. KLRA-98-00319) y alegan que la Junta erró al:

*"Aprobar la consulta y no considerar la anterior oposición de la ahora Administración de Desarrollo Económico y Comercio sobre un proyecto comercial de venta de alimentos en la finca en cuestión;*

*Omitir en sus determinaciones de hecho la existencia de un supermercado y carnicería que colinda con la finca objeto de la consulta;*

*No considerar el informe del oficial examinador recomendando el que se denegara la consulta, al igual que las oposiciones del Departamento de Agricultura, Departamento de Recursos Naturales y Ambientales, y del Instituto de Cultura."*

Mediante Resolución de 18 de junio de 1998 consolidamos ambos recursos de revisión y solicitamos a las partes que se expresaran en cuanto a la desestimación solicitada por la Junta. El recurrido, Miguel Rivera Bermúdez, también solicitó la desestimación de ambos recursos por entender que los peticionarios carecen de legitimación activa. Procede considerar, en primer lugar, este aspecto jurisdiccional.

## II

*"La capacidad de una parte para realizar con eficacia actos procesales como parte litigante y comparecer como demandante o demandado, en representación de cualquiera de ellos, se conoce propiamente como legitimación en causa." Col. Opticos de P.R. v. Vani Visual Center, 124 D.P.R. 559, 563 (1989). Es sabido que: "[p]oseen legitimación activa, aquellos que han sufrido un daño claro y palpable, no uno abstracto ni hipotético; cuando existe un nexo causal entre la causa de acción que se ejercita y el daño alegado; y, finalmente, si la causa de acción surge al amparo de la constitución o alguna ley. Asociación de Maestros v. Arsenio Torres, 94 J.T.S. 145, res. del 30 de noviembre de 1994, y casos allí citados." García Oyola v. Junta, 97 J.T.S. 25, pág. 662.*

*"Para que haya 'acción legitimada' tiene siempre que existir la 'capacidad para demandar' pero no todo el que tiene 'capacidad para demandar' tiene 'acción legitimada' en un pleito específico...".* Col. Opticos de P.R. v. Vani Visual Center, supra. *Así, las partes deberán tener, además de capacidad para demandar, un interés legítimo en el pleito."* Ibid.

Esta doctrina ha sido interpretada de manera amplia y liberal en el ámbito administrativo ya que cuando una persona demanda a las agencias y funcionarios gubernamentales no tiene que demostrar que ha sufrido daño económico alguno y puede basar su reclamación en consideraciones de tipo ambiental, recreativo, espíritual o estético. *Salas Soler v. Srio. de Agricultura,* 102 D.P.R. 716 (1974); *García Oyola v. Junta,* **97 J.T.S. 25.**

Establece la Ley de Procedimiento Administrativo Uniforme en su Sección 4.2, según enmendada, 3 L.P.R.A. sec. 2172, que podrá interponer un recurso de revisión ante el Tribunal de Circuito de Apelaciones *"una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente...".* En atención a ello, queda claro que para que se considere que una persona tiene legitimación activa para interponer un recurso de revisión ante nuestro Foro apelativo es imprescindible que se trate de una parte *"adversamente afectada".* Véase: *Empresas Fonalledas, Inc., Plaza del Caribe, S.E., y Plaza Las Américas, Inc. v. Junta de Planificación de Puerto Rico,* Núm. KLAA-96-00191, Circuito Regional V, Resolución de 16 de diciembre de 1997, Segarra Olivero, Juez Ponente.

A esos efectos, *"parte"* ha sido definido como:

*"toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento."* 3 L.P.R.A. 2102 (j)."*

En el caso de autos, los recurridos alegan que los peticionarios no eran *"partes"* a los fines de solicitar la revisión de la Resolución emitida por la Junta. De hecho, *"una parte puede carecer de legitimación activa para participar en la revisión judicial, pero puede ser considerada como 'agraviada' e interesada en participar e intervenir en el proceso administrativo. La diferencia reside en la laxitud del procedimiento administrativo vis a vis el judicial."* D. Fernández, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* Colombia, ed. Forum, 1995, pág. 161. Es sabido que *"la intervención es·el mecanismo procesal para que una persona que no fue parte original en un procedimiento, pueda defenderse de la determinación administrativa."* Asociación de Residentes Parque Montebello v. Montebello Development Corp., **95 J.T.S. 54,** pág. 861. En cuanto a ello la Ley de Procedimiento Administrativo Uniforme en su sección 3.5, 3 L.P.R.A. sec. 2155, dispone que:

*"Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:*

*Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.*

*Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.*

*Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.*

*Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.*

*Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.*

*Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.*

*Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.*

*La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención."*

Como dijimos en *Vecinos del Sector v. Ing. José E. Montañez*, Núm. KLRA-96-00243, Sentencia de 14 de octubre de 1996, Circuito Regional III, González Román, Juez Ponente:

*"[l]a solicitud de intervención escrita es de vital importancia para la agencia administrativa, porque constituye un mecanismo para poder determinar si la parte que interesa intervenir en el procedimiento cuenta con legitimación activa para ello. Véase Colegio de Opticos de Puerto Rico v. Vani Visual, 124 D.P.R. 559 (1989). Además, es el vehículo procesal para que una persona que tiene un interés legítimo y que no fuere parte original en un procedimiento pueda someter una petición por escrito y pueda defenderse de una determinación que entienda le perjudica."*

Es importante señalar -como acertadamente afirma D. Fernández, *ibid*, pág. 161- que las personas pueden participar de distintas maneras en un caso administrativo. Así *"[p]ueden ser testigos a requerimiento de la agencia o de las partes, suplir evidencia documental, participar en calidad de amicus curiae y que se les permita presentar un argumento oral."* Así queda establecida la diferencia entre un mero participante y un interventor, pues:

*"[l]a función del participante se limita al papel que ha solicitado desempeñar, es decir, ser testigo, "amigo de la corte", suplir evidencia documental o prestar una argumentación de carácter oral. Por el contrario, la solicitud de interventor va más lejos y le asegura una participación más plena en el procedimiento, la cual se encuentra avalada por el reconocimiento de que posee un derecho".* D. Fernández, *ibid.*

En el caso de autos, si bien los peticionarios Miguel Colón, José Laborde y Eligio Colón participaron en el procedimiento administrativo ante la Junta, éstos lo hicieron en el carácter de *"meros participantes"* ya que comparecieron como testigos en la vista. Nunca solicitaron que se les permitiera participar en calidad de interventores. El peticionario Santos López Berríos no participó ni solicitó intervención ante la Junta. Los peticionarios, tampoco, cumplen con los requisitos establecidos para determinar si una persona posee legitimación activa. Véase: *García Oyola v. Junta, supra*. Estos sólo alegan que la construcción del propuesto supermercado los afectaría a consecuencia de la competencia. Así, el señor Santos López expone que la construcción de un supermercado de 30,000 pies, el cual competiría con su Supercolmado y Carnicería López, lo llevaría a la ruina económica. De la prueba, también, surge que el señor José Laborde, dueño de tres farmacias, alegó que con la construcción del supermercado había un *"overlapping"* de productos. Ello no es suficiente para reconocerle a una parte que posee legitimación activa. ■ Al respecto, Robert M. Anderson en su libro *American Law of Zoning*, 3d.ed., New York, Lawyers Cooperative Publishing Co., 1986, Vol. 4, Sec. 27.17, págs. 502-504, expresó:

*"The courts have consistently held that regulation of competition is not a legitimate objective of land-use controls. There is some disagreement among the courts as to whether a person who will be placed in a less favorable competitive position by an administrative decision is a person aggrieved, entitled to institute proceeding to review such decision. Thus, an apartment owner sought review of a reclassification of land which was not nearby, but which would permit construction of apartments in competition with his own. A Maryland court held that he was not a person aggrieved by the decision and that he was without standing to seek review. The same result was reached by a Massachusetts court where a restaurant owner sought review of a decision granting a variance to construct a competing restaurant. The court said that it was no part of the purpose of zoning regulation to protect business from competition is not a person aggrieved as that term is employed in the statutes relating*

*to judicial review.*

*A Connecticut decision, while it found taxpayers to be persons aggrieved, held that a plaintiff asserting increased competition to his package store does not qualify as an aggrieved person. The court said: "If the sole basis of the plaintif's grievance was that the new package store business would create competition, he would not qualify as an aggrieved person". Similar decision have been reached by courts in Illinois, Missouri, Nebraska, New York, and Washington...".*

Véase, también, *Lucky Stores v. Board of Appeals of Montgomery County,* 270 Md. 513 (1973).

Por lo tanto, no pueden ser considerados como partes *"adversamente afectadas"* a los fines de poder interponer un recurso de revisión ante este Foro apelativo. En consecuencia carecemos de jurisdicción ▆ para considerar el presente recurso.

## III

En atención a lo antes mencionado, desestimamos los recursos de revisión interpuestos ante nos, por carecer de jurisdicción para poder proceder a su consideración.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 215

1. Anteriormente la Junta había tenido ante sí la consideración de la consulta de ubicación núm. 93-41-0697-JPU para la aprobación de un proyecto de construcción de facilidades comerciales en ese lugar la cual fue denegada.

2. De hecho, los recurrentes antes referidos no presentaron prueba ante la Junta, ni por consiguiente lo incluyeron con este recurso, para sustentar sus alegaciones sobre la ruina e impacto económico del proyecto en sus negocios. recurso de revisión ante este Foro apelativo.

3. Hernández Colón en su libro Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, San Juan, Puerto Rico, Michie of Puerto Rico Inc., 1997, sec. 1002, pág. 91, establece que:

*"[l]a falta de standing da lugar a una falta de jurisdicción en el tribunal y por consiguiente es una condición insubsanable, que puede plantearse en cualquier etapa del proceso e incluso de oficio por el propio tribunal."*

A esos efectos, dispuso nuestro más alto Foro en *Hernández Torres v. Hernández Colón,* **92 J.T.S. 16,** pág. 9195, que:

*"...Hoy resolvemos que los Representantes-demandantes carecen de legitimación activa para iniciar la presente acción en representación del interés público y que por lo tanto, ni este Foro, ni el tribunal de instancia, tienen jurisdicción para adjudicar la controversia referente a la constitucionalidad del presupuesto general del año fiscal en curso."*