Roberto Hernández Rodríguez, demandante y recurrido, *v.* Colegio de Optómetras de Puerto Rico, demandado y recurrido, y Eric Guzmán Flores, interventor y peticionario.

*Número:* CC-2001-490 *Resuelto:* 24 de junio de 2002

*Víctor P. Miranda Correa*, abogado del Dr. Eric Guzmán Flores, peticionario; *Arnaldo Castro Callejo* y *Ariel O. Caro Pérez*, abogados del Dr. Roberto Hernández Rodríguez, recurrido; *Miguel González Vargas*, abogado del Colegio de Optómetras de Puerto Rico, recurrido; *Héctor M. Collazo Maldonado*, abogado de la Academia de Ópticos de Puerto Rico, *amicus curiae; Pedro Santiago Rivera* y *Rafael Alonso Alonso*, abogados de Pearle Vision Center of Puerto Rico, *amicus curiae.*

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

En el presente caso debemos evaluar la validez del Código de Ética Profesional para la práctica de la optometría en Puerto Rico. Después del análisis correspondiente, resolvemos que el referido Código carece de eficacia por no haber sido aprobado conforme al procedimiento de notificación y comentarios que dispone la Ley de Procedimiento Administrativo Uniforme.([1])

I

Tanto el Dr. Eric R. Guzmán Flores, aquí peticionario, como el Dr. Roberto Hernández Rodríguez, presentaron sus candidaturas para ocupar el puesto de presidente del Colegio de Optómetras de Puerto Rico (en adelante el Colegio). Posteriormente, el Colegio descalificó al doctor Guzmán como candidato por alegadamente ser empleado

---

([1]) Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.* (en adelante LPAU).

de corporaciones privadas no profesionales como Eye Center y Pearl Vision Center, en violación del Art. XXIII del Código de Ética Profesional del Colegio. Dicha disposición provee que, aparte de ciertas limitadas excepciones, un optómetra no podrá contratar sus servicios profesionales con terceras personas, a menos que la otra parte contratante fuese también un colegiado bonafide, oftalmólogo o institución que se rija por los cánones de ética y las leyes para la práctica de la optometría, y estuviese, por lo tanto, autorizado por ley a ejercer la optometría en Puerto Rico.

En vista de lo anterior, el doctor Guzmán acudió ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico en una acción contra el Colegio para impugnar su descalificación. Como resultado de esta acción judicial, dicho tribunal dictó sentencia en la que acogió un acuerdo entre las partes mediante el cual el Colegio se obligó a no impedir que el doctor Guzmán participara de las elecciones para la presidencia.

Así las cosas, el doctor Hernández presentó un recurso de *mandamus* ante el Tribunal de Primera Instancia contra el Colegio. Alegó que el doctor Guzmán estaba inhabilitado para aspirar al puesto de presidente del Colegio porque mantenía una relación laboral indebida con corporaciones privadas no profesionales como Pearle Vision Center y Eye Center, lo cual contravenía las disposiciones del citado Art. XXIII del Código de Ética, y que el Colegio y su Junta de Gobierno tenían el deber ministerial de descertificar o no aceptar la nominación del doctor Guzmán al referido puesto.

El Colegio contestó la demanda y aceptó todas las alegaciones. Expresó, además, que estaba de acuerdo con el sentir del doctor Hernández pero que, en vista de la sentencia emitida por el Tribunal de Distrito Federal para el Distrito de Puerto Rico no podía impedir que el doctor Guzmán se postulara como candidato para presidente.

En el ínterin, el Colegio finalizó su proceso eleccionario y, como resultado del mismo, el doctor Guzmán venció al doctor Hernández por trece votos.

Después de varios trámites procesales, el Tribunal de Primera Instancia celebró una vista y, luego de evaluar los planteamientos del doctor Hernández y del Colegio, emitió una orden que paralizó todo procedimiento para certificar o juramentar al doctor Guzmán como presidente. Además, determinó que el doctor Guzmán era parte necesaria en el pleito, y a tales efectos ordenó su emplazamiento. Posteriormente, el tribunal celebró otra vista argumentativa a la cual acudieron el doctor Hernández, el Colegio y el doctor Guzmán. En ella el doctor Guzmán alegó, en síntesis, que el Código de Ética del Colegio era nulo porque no fue aprobado conforme a la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante LPAU). Sostuvo, además, que el citado Art. XXIII de dicho código excede los poderes delegados por la Asamblea Legislativa a la Junta Examinadora de Optómetras. Por último, solicitó al tribunal que ordenara al Colegio que lo certificara como su presidente.

Por su parte, el doctor Hernández alegó que el Reglamento y el Código de Ética Profesional del Colegio son válidos y eficaces porque fueron sometidos por el Colegio a la Junta Examinadora de Optómetras y ésta los aprobó mediante Resolución 1–98 de 15 de julio de 1998. También señaló que no se debe dejar desprovisto al Colegio de un Código de Ética Profesional sin antes aprobarse uno nuevo.

Después de evaluar los planteamientos de las partes, el tribunal dejó sin efecto la orden de paralización. Mientras tanto, el Colegio solicitó al tribunal que emitiera un interdicto permanente contra el doctor Guzmán para que cesara y desistiera de practicar la optometría a través de corporaciones privadas no profesionales en violación a la prohibi-

ción del Art. XXIII del Código de Ética Profesional del Colegio y de la Ley General de Corporaciones de 1995.([2])

El tribunal de instancia celebró una vista argumentativa y, tras evaluar los planteamientos de las partes y la totalidad de la prueba, emitió una sentencia en la cual declaró con lugar la demanda de *mandamus*. Resolvió que el Reglamento y el Código de Ética Profesional del Colegio fueron aprobados válidamente, al amparo de las disposiciones de la Ley del Colegio de Optómetras,([3]) y que era ilegal que las corporaciones privadas no profesionales practiquen la optometría. Determinó, además, que el Colegio tenía el deber ministerial de impedir la elección del doctor Guzmán como presidente del Colegio porque su relación profesional con corporaciones privadas no autorizadas para ejercer la optometría violaba el citado Art. XXIII del Código de Ética Profesional. Por ende, declaró sin lugar la petición del doctor Guzmán para que el Colegio lo certificara como su presidente.

Oportunamente, el doctor Guzmán acudió ante el Tribunal de Circuito de Apelaciones, el cual confirmó la sentencia recurrida. Resolvió que el Código de Ética Profesional fue aprobado válidamente por la Junta Examinadora de Optómetras, por lo que es obligatorio para todos los colegiados y que, en vista de que el doctor Guzmán ha violado sus disposiciones al mantener una relación profesional con Pearle Vision Center y Eye Center, el tribunal de instancia actuó correctamente al expedir el *mandamus*.

Inconforme con la determinación del Tribunal de Circuito de Apelaciones, el doctor Guzmán acudió ante nos. Alega que el Código de Ética Profesional del Colegio, en el cual se prohíbe la práctica de la optometría a través de corporaciones privadas no profesionales, es nulo por no haberse aprobado conforme a la LPAU. Señala también que dicha prohibición es *ultra vires* porque excede la delegación

---

([2]) Ley Núm. 144 de 1 de agosto de 1995 (14 L.P.R.A. sec. 2601 *et seq.*).

([3]) Ley Núm. 129 de 17 de diciembre de 1993 (20 L.P.R.A. sec. 545 *et seq* .) (en adelante Ley del Colegio de Optómetras).

de poderes conferida por la asamblea legislativa a la Junta de Examinadora de Optómetras.

Luego de evaluar la petición de *certiorari*, expedimos el auto y accedimos a la solicitud de Pearle Vision Center of Puerto Rico, Inc. para comparecer como *amicus curiae* en el presente caso. Con el beneficio de las comparecencias de las partes y del *amicus curiae*, estamos en posición de resolver.

Procede que examinemos, en primer lugar, a quién le corresponde aprobar el Código de Ética Profesional para la práctica de la optometría en Puerto Rico y cuál es el procedimiento aplicable para la aprobación del referido código.

## II

La Ley del Colegio de Optómetras dispone en su Art. 3 las facultades concedidas al Colegio, entre las cuales se encuentran las siguientes:

> El Colegio de Optómetras de Puerto Rico tendrá facultad para:
>
> . . . . . . . .
>
> (e) Redactar y adoptar un reglamento que será obligatorio para todos los miembros, según lo adopte e implante la Asamblea que a tal fin se constituya para su aprobación, o en defecto de dicha Asamblea, según lo redacte e implante la Junta Directiva que más adelante se establece; así como para enmendar dicho reglamento en la forma y bajo los requisitos que en el mismo se instituyan.
>
> . . . . . . . .
>
> (i) *Someter para su adopción por la Junta Examinadora, un Código de Ética Profesional que regirá la conducta de los optómetras.* (Énfasis suplido.) 20 L.P.R.A. sec. 545b(e)(i).

Al momento en que el Colegio le presentó el Código de Ética Profesional a la Junta Examinadora de Optómetras para que ésta lo aprobara, la ley vigente era la Ley Núm. 80 de 26 de junio de 1964, según enmendada, 20 L.P.R.A. ant. sec. 531 *et seq.* (en adelante Ley de la Junta

Examinadora de Optómetras de 1964). Mediante dicha ley se dispuso que la Junta Examinadora tenía la facultad y el deber de expedir, denegar, suspender o revocar la licencia para la práctica de la optometría en Puerto Rico; preparar y administrar el examen de reválida para la práctica de la optometría; adoptar las reglas y los reglamentos que fueran necesarios para la ejecución de las disposiciones de la ley; atender y resolver las querellas presentadas por violación a la ley; citar testigos y tomar declaraciones y juramentos en relación con los asuntos de su competencia, e imponer multas, previa vista administrativa, a quienes violaran la ley. 20 L.P.R.A. ant. sec. 534.

█ En 1990, la Ley de la Junta Examinadora de Optómetras de 1964 fue enmendada para disponer que

[l]a Junta deberá cumplir con lo establecido en las secs. 2101 *et seq.* del Título 3, conocidas como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, al ejercer las facultades que se le conceden mediante [esta ley] para reglamentar, investigar y adjudicar los asuntos bajo su jurisdicción.[4]

Véase, además, el Art. 5 de la referida ley de 1964 sobre la obligación de la Junta Examinadora de Optómetras de cumplir con las disposiciones de la LPAU al reglamentar, investigar y adjudicar los asuntos de su competencia. 20 L.P.R.A. ant. sec. 535.

En 1998 el Colegio le remitió a la Junta Examinadora de Optómetras un código de ética para la práctica de la optometría en Puerto Rico. Mediante Resolución 1–98 de 15 de julio de 1998, ésta aprobó dicho código de ética, el cual rige en la actualidad la conducta de los optómetras que ejercen la profesión en el país.

A pesar de que en 1999 la Ley de la Junta Examinadora de Optómetras de 1964 fue derogada por la Ley Núm. 246

---

[4] Ley Núm. 29 de 7 de agosto de 1990 (20 L.P.R.A. ant. sec. 534).

de 15 de agosto, 20 L.P.R.A. sec. 544 *et seq.*, valga aclarar que el caso de autos debe examinarse al amparo de las disposiciones de la ley de 1964, pues fue bajo ésta que se aprobó el Código de Ética Profesional en discusión.([5])

A la luz de las disposiciones legales transcritas arriba, se desprende con claridad que la obligación de aprobar y adoptar un código de ética para la práctica de la optometría en Puerto Rico le corresponde a la Junta Examinadora de Optómetras en cumplimiento con las disposiciones de su ley habilitadora. Como vimos, la Ley de la Junta Examinadora de Optómetras de 1964 imponía a la Junta Examinadora de Optómetras la obligación de cumplir con las disposiciones de la LPAU al ejercer sus facultades para reglamentar, investigar y adjudicar. 20 L.P.R.A. ants. secs. 534(m) y 535. Es decir, aunque el Colegio colabore en la adopción del Código de Ética Profesional, es la Junta Examinadora de Optómetras quien tiene la obligación última de aprobar el Código de Ética Profesional para la práctica de la optometría en Puerto Rico en cumplimiento con las disposiciones pertinentes de la LPAU.

Aclarado lo anterior, veamos entonces la validez del Código de Ética del Colegio para la práctica de la optometría en Puerto Rico, según fue aprobado al amparo de la Ley de la Junta Examinadora de Optómetras de 1964. En particular debemos examinar, con respecto a las disposiciones de la LPAU, cuál es el procedimiento aplicable para la aprobación del referido Código de Ética Profesional del Colegio y si éste se cumplió a cabalidad.

---

([5]) En cuanto al asunto que nos concierne en el presente caso, esta nueva ley dispone que la Junta Examinadora de Optómetras, con la colaboración del Colegio, tendrá la obligación de preparar, redactar y publicar un código de ética para la práctica de la optometría en Puerto Rico dentro de los ciento veinte días a partir de la vigencia de la ley. Para ello deberá seguir los procedimientos que establece la LPAU. Dicho código de ética entrará en vigor una vez sea ratificado mediante votación secreta por no menos de dos terceras partes de los miembros del Colegio. 20 L.P.R.A. sec. 544y.

# III

█ El subcapítulo II de la LPAU detalla el procedimiento que una agencia debe observar para que una regla o un reglamento de naturaleza legislativa tengan fuerza de ley después de aprobado. En síntesis, se requiere que se notifique a la ciudadanía la reglamentación propuesta mediante su publicación en un diario de circulación general y que se conceda un plazo no menor de treinta (30) días. desde la publicación para someter comentarios por escrito. 3 L.P.R.A. secs. 2121 y 2122. Esta notificación contendrá un resumen o explicación breve de los propósitos de la reglamentación propuesta, una cita de la ley que autoriza esta reglamentación y la forma, el sitio, la fecha y la hora en .que se podrán someter comentarios por escrito o solicitar mediante escrito fundamentado una vista oral sobre la reglamentación propuesta. 3 L.P.R.A. sec. 2121. Se deberá indicar,. además, el lugar físico donde estará disponible para el público el texto completo de la reglamentación a adoptarse. Íd.([6])

█ Una vez se adopta el reglamento, la agencia deberá presentarlo ante la consideración del Secretario de Estado, el cual posee la facultad de rechazarlo, modificarlo o aprobarlo. 3 L.P.R.A. secs. 2128, 2131 y 2132. Si el reglamento es aprobado, el Secretario de Estado deberá publicar una síntesis de su contenido en dos periódicos de circulación general, con expresión de su número, fecha de vigencia y agencia que lo aprobó. 3 L.P.R.A. sec. 2128(d). Como norma general, el reglamento comenzará a regir pa-

---

([6]) La Ley Núm. 293 de 1 de septiembre de 2000 enmendó esta sección para disponer que la publicación del reglamento propuesto se hará en español y en inglés en no menos de un periódico de circulación general en Puerto Rico y en español e inglés en la Red de Internet. Los comentarios por escrito se podrán someter por correo electrónico y la agencia al recibirlos acusará recibo de los mismos por correo electrónico dentro de dos (2) días laborables de su recibo. El aviso publicado en el periódico deberá contener, además, la dirección electrónica de la página donde la agencia publicó el aviso en la Red y el texto completo de la reglamentación.

sados treinta días desde su presentación ante el Departamento de Estado. 3 L.P.R.A. sec. 2128(a).[7]

La fecha en que se entiende que un reglamento fue debidamente presentado ante el Departamento de Estado es aquella en que el Secretario de Estado le concede su aprobación. 3 L.P.R.A. sec. 2131. La agencia deberá, además, conservar un expediente con los documentos relacionados con la promulgación del reglamento. 3 L.P.R.A. sec. 2126. Sobre el procedimiento de reglamentación de la LPAU, véanse, además: *Asoc. Fcias. Com. v. Depto. de Salud*, 156 D.P.R. 105 (2002); *Mun. de San Juan v. J.C.A.*, 152 D.P.R. 673 (2000).

Ahora, no toda regla o reglamento tiene que aprobarse conforme al procedimiento de reglamentación formal que resumimos anteriormente. La LPAU expresamente exime de dicho procedimiento a las "reglas interpretativas", las cuales incluyen las reglas relacionadas con la administración interna de la agencia que no afectan directa y sustancialmente los derechos del público en general y las declaraciones interpretativas y de política general que no tienen efecto legal. 3 L.P.R.A. sec. 2102(*l*)(1)(2). En realidad lo que sucede es que la LPAU excluye estas instancias de su definición de *regla* o *reglamento*. Por lo tanto, no les aplica el procedimiento formal de reglamentación. Con relación a estas reglas, hemos expresado que son adoptadas para darle uniformidad a los procesos internos de las agencias, pautar la discreción administrativa u otros fines internos. *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993).

---

[7] La Ley Núm. 205 de 25 de agosto de 2000 enmendó la Sec. 2.8 de la LPAU (3 L.P.R.A. sec. 2128), para disponer un requisito adicional al procedimiento de reglamentación. Se establece que "[u]na vez presentado un reglamento en el Departamento de Estado, se radicará en la Biblioteca Legislativa una copia del mismo con la constancia de su presentación, y de su traducción al inglés si la misma fue presentada simultáneamente. El Director de la Oficina de Servicios Legislativos dispondrá por reglamento el formato para la radicación de los documentos, y su medio, que podrá ser en papel o por cualquier vía electrónica. La radicación del reglamento en la Biblioteca Legislativa es un requisito indispensable para la validez del mismo". 2000 Leyes de Puerto Rico 1327, 1329.

■ En cuanto a las llamadas *reglas legislativas*, las cuales sí tienen que observar el procedimiento de reglamentación formal para su validez, las hemos descrito como aquellas que una agencia administrativa formula al amparo de una delegación expresa de la Asamblea Legislativa para darle contenido sustantivo detallado a alguna norma estatutaria general o de algún otro modo complementar normativamente el esquema legislativo. *Agosto Serrano v. F.S.E.*, supra. Su propósito es crear derechos, imponer obligaciones y establecer un patrón de conducta que tiene fuerza de ley. *Asociación de Farmacias v. Departamento de Salud*, supra; *Mun. de San Juan v. J.C.A.*, supra.

■ *Claro está, para que una reglamentación de naturaleza legislativa sea vinculante y determinante de derechos, deberes u obligaciones de las personas sujetas a la jurisdicción de la agencia, tiene que haber sido aprobada mediante el procedimiento de notificación y comentario que dispone la LPAU, y el cual reseñamos anteriormente.* 3 L.P.R.A. sec. 2127; *Asociación de Farmacias v. Departamento de Salud*, supra; *Mun. de San Juan v. J.C.A.*, supra.

Teniendo en consideración la normativa anterior, veamos los hechos del caso de autos.

## IV

En el presente caso, no cabe duda de que el Código de Ética Profesional vigente para la práctica de la optometría es una regla que fue formulada por la Junta Examinadora de Optómetras al amparo de una delegación expresa de la Asamblea Legislativa con el fin de complementar normativamente el esquema legislativo. Su propósito es apuntar los deberes y las obligaciones éticas de los optómetras que practican la profesión en Puerto Rico. Por consiguiente, como estamos ante una reglamentación legislativa, su aprobación debió de haberse realizado conforme al procedimiento de notificación y comentario dispuesto en la LPAU.

Nótese, además, que la propia derogada Ley de la Junta Examinadora de Optómetras de 1964, al amparo de la cual se aprobó dicho Código de Ética Profesional, ordenaba que se observarán las disposiciones de la LPAU en todo procedimiento de reglamentación. 20 L.P.R.A. ants. secs. 534(m) y 535.

De todas formas, la LPAU misma obliga a la Junta Examinadora de Optómetras, como a toda agencia gubernamental no exceptuada expresamente de su aplicación, a cumplir con sus disposiciones al ejercer facultades cuasi judiciales y cuasi legislativas. 3 L.P.R.A. sec. 2102(a). Era imprescindible, por lo tanto, que al aprobarse el Código de Ética Profesional para la práctica de la optometría en Puerto Rico se cumpliera con los requisitos de notificación de la regla propuesta, concesión de oportunidad a la ciudadanía de presentar sus comentarios y publicación de la regla adoptada, para que dicho Código de Ética Profesional entrara en vigor como una reglamentación legislativa. Véase D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogotá, Ed. Forum, 1993, págs. 120–121. Estos requisitos van a la médula del debido proceso de ley estipulado por la propia LPAU. Íd. El lenguaje de las disposiciones legales que los implementan exige su cumplimiento de manera obligatoria. Íd.

A menos que se trate de una de las excepciones específicas provistas en la LPAU, la agencia debe cumplir con las disposiciones de dicha ley al embarcarse en un procedimiento de reglamentación si pretende que sus reglas tengan efecto y fuerza de ley. No hay nada que avale la decisión de una agencia administrativa de reemplazar el esquema regulador de la LPAU por un procedimiento de su propia invención. Véase B. Schwartz, *Administrative Law*, 3ra ed., Ed. Boston, Little, Brown and Co., 1991, pág. 194.

A igual resultado llegó el Tribunal Supremo federal en *Morton v. Ruiz*, 415 U.S. 199 (1974). En esa ocasión se invalidó una reglamentación del *Bureau of Indians Affairs* que había sido aprobada desde hacía más o menos quince

años. Se resolvió que al incumplirse con las disposiciones de la Ley Federal de Procedimiento Administrativo Uniforme,([8]) que requieren la publicación de las reglas substantivas, la agencia no le impartió eficacia y validez a su reglamentación.

> The conscious choice of the Secretary not to treat this extremely significant eligibility requirement ... as a legislative-type rule, renders it ineffective so far as extinguishing rights of those otherwise within the class of beneficiaries contemplated by Congress .... *Morton v. Ruiz*, supra, pág. 236.

Asimismo, en *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), el más alto Foro federal se negó a darle "fuerza y efecto de ley" a una reglamentación adoptada por el Departamento del Trabajo federal porque no fue aprobada conforme al procedimiento de notificación y comentarios dispuesto en la Ley Federal de Procedimiento Administrativo Uniforme. En esa ocasión se determinó lo siguiente:

> There is also a procedural defect in the [Department of Labor's Office of Federal Contract Compliance Programs] disclosure regulations which precludes courts from affording them the force and effect of law. That defect is a lack of strict compliance with the APA .... Certainly regulations subject to the APA cannot be afforded the "force and effect of law" if not promulgated pursuant to the statutory procedural minimum found in that Act. [*See, e.g., Morton v. Ruiz, 415 U.S. 199 (1974); United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 758 (1972).*
>
> Section 4 of the APA, 5 U.S.C. 87 553, specifies that an agency shall afford interested persons general notice of proposed rulemaking and an opportunity to comment before a substantive rule is promulgated.
>
> . . . . . . . .
>
> In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decision-making require that agency decisions be made only after affording interested persons notice and an opportunity to comment. With the consideration that is the necessary and intended consequence of such procedures, [Department of Labor's Office of Federal

---

([8]) 5 U.S.C.A. sec. 551 *et seq.*

Contract Compliance Programs] might have decided that a different [regulation] was more appropriate. *Chrysler Corp. v. Brown*, supra, págs. 312–316.

 No obstante lo anterior, el único procedimiento que llevó a cabo la Junta Examinadora de Optómetras para aprobar el Código de Ética Profesional vigente fue emitir la Resolución 1–98 de 15 de julio de 1998 a esos efectos. No existe controversia en cuanto a que se obvió el cumplimiento de las disposiciones sobre reglamentación de la LPAU. Sin embargo, la mera aprobación del Código de Ética Profesional mediante resolución no es suficiente para que éste sea vinculante y obligatorio para los colegiados. Siendo esto así, dicho código es nulo y carece de toda eficacia. No podemos avalar, entonces, la orden de los foros inferiores para que el Colegio no certifique o juramente al doctor Guzmán como su presidente amparándose en una disposición que carece de eficacia alguna.

En vista del resultado al que llegamos, no discutiremos los planteamientos sustantivos del doctor Guzmán en cuanto a que el Art. XXIII del Código de Ética Profesional del Colegio excede las facultades que se le delegaron a la Junta Examinadora de Optómetras mediante la derogada Ley de la Junta Examinadora de Optómetras de 1964.

Conforme a lo anterior, *se revoca el dictamen del Tribunal del Circuito de Apelaciones. Dado que el Código de Ética Profesional para la práctica de la optometría en Puerto Rico es nulo, se deniega el* mandamus. *Además, le ordenamos al Colegio de Optómetras de Puerto Rico que certifique al Dr. Eric R. Guzmán Flores como presidente de dicha institución. Si el Colegio de Optómetras de Puerto Rico decide ejercer su facultad de someter a la Junta Examinadora de Optómetras un nuevo Código de Ética Profesional, para aprobarlo ésta deberá actuar conforme al procedimiento de reglamentación dispuesto en la Ley de Procedimiento Administrativo Uniforme*, supra, *y conforme*

*a la delegación de poderes contenida en la Ley de la Junta Examinadora de Optómetras de 1999*, supra.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Corrada Del Río se inhibió. El Juez Asociado Señor Rivera Pérez no intervino.