EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Centro Unido de Detallistas, et. al.<br><br>      Recurridos<br><br>          vs.<br><br>Comisión de Servicio Público et als<br><br>      Peticionaria | Certiorari<br><br>2008 TSPR 116<br><br> 174 DPR \_\_\_\_ |

Número del Caso: CC-2007-690


Fecha: 11 de julio de 2008

Tribunal de Apelaciones:

          Región Judicial de San Juan-Panel V

Juez Ponente:

          Hon. Carlos Rivera Martínez

Oficina del Procurador General:

          Lcda. Rosa Elena Pérez Agosto
          Procuradora General Auxiliar

Abogado de la Parte Recurrida:

          Lcdo. Manuel Fernández


Materia: Impugnación de Reglamento


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro Unido de
Detallistas, et. al.

   Recurridos

       v.                   CC-2007-690     *Certiorari*

Comisión de Servicio Público

   Peticionaria

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 11 de julio de 2008.

El recurso de epígrafe tiene su origen en la impugnación del reglamento de multas administrativas de la Comisión de Servicio Público, por parte del Centro Unido de Detallistas y de otras entidades, al amparo de la Sec. 2.7 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.). Esta disposición permite que cualquier persona solicite la anulación de un reglamento por causa del incumplimiento con el proceso de reglamentación que establece dicha ley.

En esta ocasión, la interrogante que debemos resolver es si mediante esa sección también pueden impugnarse faltas *no relacionadas* con el mencionado criterio; a saber, la inobservancia de las normas

contenidas en la Ley de Flexibilidad Administrativa y Reglamentaria para el Pequeño Negocio.

Por entender que la llamada "acción de nulidad" de la L.P.A.U. *solamente* puede utilizarse para remediar el incumplimiento con el proceso uniforme de reglamentación de ese estatuto, revocamos la sentencia recurrida.

I.

La Comisión de Servicio Público de Puerto Rico (en adelante, la Comisión) inició a mediados del año 2005 los trámites necesarios para adoptar el Reglamento para la Imposición de Multas Administrativas, Reglamento Núm. 7041 de 9 de agosto de 2005. A esos efectos, el presidente de la Comisión le cursó una carta a la Procuradora de Pequeños Negocios (en adelante, la Procuradora) junto a una copia del "Análisis de Flexibilidad Inicial" sobre el señalado reglamento, según lo dispone la Ley de Flexibilidad Administrativa y Reglamentaria para el Pequeño Negocio (L.F.A.R.), Ley Núm. 454 de 28 de diciembre de 2000, 3 L.P.R.A. sec. 2251 *et seq.*

Poco tiempo después, la Comisión celebró una vista pública a la cual asistieron varios de sus concesionarios, algunas asociaciones integradas por éstos y la Procuradora. Como resultado de su comparecencia y del recibo del referido análisis, la funcionaria realizó varias recomendaciones acerca del reglamento propuesto. Sin embargo, no hubo comunicación posterior entre ambas entidades sobre tales señalamientos.

Oportunamente, la Comisión presentó el reglamento aludido ante el Departamento de Estado. Por su parte, el Secretario de Estado le impartió su aprobación el 11 de octubre de 2005; fecha a partir de la cual entró en vigor el mismo.

En desacuerdo con lo ocurrido, el Centro Unido de Detallistas, así como varios concesionarios y asociaciones de concesionarios (en adelante, los recurridos), solicitaron al Tribunal de Apelaciones la anulación del reglamento bajo la Sec. 2.7 de la L.P.A.U. por estimar que en su adopción no se cumplió con las normas establecidas por la L.F.A.R. En particular, señalaron que la Comisión no acogió las recomendaciones de la Procuradora; no sometió un informe sobre el impacto económico del reglamento; no remitió un "Análisis de Flexibilidad Final", y no preparó su versión inicial en la forma dispuesta por la L.F.A.R. Además, adujeron que la Comisión incumplió con su obligación de enviar copia de los análisis y del reglamento adoptado a la Oficina de la Procuradora de Pequeños Negocios.

Por otra parte, cuestionaron la norma incluida en el reglamento dirigida a prohibir la "conducta impropia" de las personas cobijadas por el mismo. A su entender, dicha norma es inherentemente imprecisa y adolece de vaguedad, por lo que viola las Secs. 2 y 7 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico.

En atención a estos señalamientos, la Comisión compareció ante el Tribunal de Apelaciones y adujo que el

reglamento en controversia se aprobó cumpliendo cabalmente con las disposiciones de la L.P.A.U., así como con las de la Ley de Servicio Público de Puerto Rico, Ley Núm. 109 de 28 de junio de 1962, 27 L.P.R.A. sec. 1101 *et seq*. A su vez, negó que la norma que prohíbe la "conducta impropia" viole la Constitución y cuestionó la legitimación de los recurridos para impugnar el reglamento por el alegado incumplimiento con la L.F.A.R. Sobre los méritos de este último punto, la Comisión afirmó que cumplió sustancialmente con las normas contenidas en dicha ley.

Examinado el asunto, el Tribunal de Apelaciones rechazó el planteamiento sobre falta de legitimación y acogió los argumentos relativos al incumplimiento con las normas procesales de la L.F.A.R. Por ende, amparado exclusivamente en ese fundamento, dicho foro declaró nulo el reglamento sobre multas administrativas promulgado por la Comisión.

Tras solicitar infructuosamente la reconsideración del referido dictamen, la Comisión comparece ante nos por conducto del Procurador General y argumenta, aparte de lo ya señalado, que el alcance limitado de la revisión judicial bajo la L.F.A.R. no contempla la anulación de reglamentos como remedio al incumplimiento de sus disposiciones. Por el contrario, alega que de probarse dicha falta, ésta sólo conllevaría la imposición de medidas correctivas.

Por su parte, los recurridos reiteran su posición ante el foro apelativo y señalan, además, que a diferencia de lo

que arguye la Comisión, la L.F.A.R. no excluye el remedio de nulidad. De igual forma, aclaran que su reclamo está basado realmente en la acción de impugnación de la L.P.A.U., por lo que no consideran aplicables a este caso las normas sobre remedios correctivos contenidas en la sección de la L.F.A.R. que regula la revisión judicial.

Examinada la petición, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

El rol de la revisión judicial como parte fundamental del ordenamiento procesal administrativo puertorriqueño es innegable. No debe sorprendernos, entonces, que muchos de los casos atendidos por los tribunales versen sobre la serie de condiciones que deben estar presentes antes de ejercer esa facultad revisora. En esta ocasión, precisamente, la controversia que nos ocupa consiste en determinar si los recurridos cumplieron con los requisitos necesarios para solicitar la anulación del reglamento promulgado por la Comisión.

Como norma general, antes de considerar los méritos de una impugnación reglamentaria como la de autos, los tribunales deben cerciorarse que: (1) la legislatura permitió la revisión judicial; (2) la parte apropiada presentó la acción; (3) el reclamo se instó contra el demandado correcto; (4) la controversia goza de la necesaria madurez; y (5) se utilizó el recurso adecuado.

Véase B. Schwartz, Administrative Law, 3ra ed., L. B. & Co., págs. 470-71.

Evidentemente, en el presente caso no es necesario profundizar sobre el tercer elemento, pues es indudable que la acción se instó contra la entidad correcta; es decir, contra la agencia que promulgó el reglamento impugnado: la Comisión de Servicio Público. No obstante, el cumplimiento de los recurridos con el resto de los criterios reseñados requiere de un examen más detenido. En ese sentido, como el legislador estableció por vía estatutaria unas normas específicas sobre la revisión judicial, nuestro análisis debe tener como punto de partida la interpretación de los estatutos que gobiernan el asunto. Veamos.

A.

La Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2102 et seq., requiere que las agencias administrativas cumplan con ciertos requisitos al aprobar, enmendar o derogar sus reglamentos. Esa exigencia, sin embargo, sólo aplica a aquellas normas que afecten los derechos sustantivos de los individuos; es decir, sólo atañe a las reglas "legislativas". Este tipo de reglas crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley. Ni siquiera la propia agencia tiene discreción para desvincularse de sus efectos, pues se trata de reglas que brindan contenido sustantivo o detallado, o en cierta forma, complementan la ley. Véanse 3 L.P.R.A. secs. 2121-2141; Asoc. de Maestros v. Comisión,

159 D.P.R. 81, 93 (2003); Agosto Serrano v. F.S.E., 132 D.P.R. 866 (1993); véase, además, Hernández v. Colegio de Optómetras, 157 D.P.R. 332, 343 (2002).

Naturalmente, por la singular importancia de las reglas legislativas y por sus efectos sobre la ciudadanía en general, la L.P.A.U. condiciona su adopción a un proceso de *notificación*, *participación ciudadana* y *publicación*. Véase Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 691-92 (2000). El cumplimiento de ese proceso es indispensable para poder reconocerle fuerza de ley a la regla promulgada, ya que ello forma parte de las garantías procesales que permean todo el estatuto. Colegio de Optómetras, *supra*. Por consiguiente, a fin de promover el referido cumplimiento, la Sec. 2.7 de la L.P.A.U. decreta la nulidad de todo reglamento que se adopte al margen de sus disposiciones. A tales efectos, la sección establece lo siguiente:

> (a) Una regla o reglamento aprobado […] será nulo **si no cumpliera sustancialmente con las disposiciones de [la L.P.A.U.].**
>
> (b) **Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de [la L.P.A.U.]** deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento.
>
> (c) La acción que se inicie **para impugnar el procedimiento seguido** al adoptar las reglas o reglamentos de que se trate no paralizará [su] vigencia […], a menos que la ley al amparo de la cual se adopta disponga expresamente lo contrario. 3 L.P.R.A. sec. 2127 (énfasis suplido).

En el pasado hemos señalado que la intención del legislador al establecer esta "acción de nulidad" o "acción

de impugnación" fue crear un procedimiento uniforme de revisión judicial de las acciones tomadas por las agencias al *promulgar* sus reglamentos. Véanse Asoc. Dueños Casas Parguera v. JP, 148 D.P.R. 307, 314 (1999); Montoto v. Lorie, 145 D.P.R. 30, 39-40 (1998); véase, además, D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Forum, Bogotá, 2da ed., 2001, sec. 3.2, pág. 122.

De esta forma, de conformidad con los elementos que enumeramos anteriormente, la citada disposición no sólo autoriza la revisión judicial, sino que regula la manera en que debe presentarse la petición a esos efectos. Así, pues, el primer inciso de la Sec. 2.7 de la L.P.A.U. describe las circunstancias que podrían dar pie a la nulidad de un reglamento. Como la agencia no tiene discreción para apartarse del procedimiento establecido por la L.P.A.U., cualquier *incumplimiento sustancial* con sus normas vicia de nulidad el reglamento adoptado. Evidentemente, a fin de evaluar una impugnación bajo dicho fundamento es necesario tomar en cuenta cuáles son los requisitos que la ley considera de *ineludible cumplimiento*. Al respecto, el profesor Fernández Quiñones señala que según el texto de la L.P.A.U. "es imprescindible cumplir con los requisitos de la notificación de la regla propuesta, concesión de oportunidad a la ciudadanía de presentar sus escritos y publicación de la regla adoptada". Fernández Quiñones, *supra*, págs. 120-21; véase, además, Mun. de San Juan, *supra*.

Por su parte, el inciso (b) de la Sec. 2.7 de la L.P.A.U. establece el mecanismo para solicitar la nulidad de un reglamento de acuerdo con lo establecido en el inciso anterior. El texto de esta disposición no tiene antecedentes directos en la legislación federal homóloga, la Ley Federal de Procedimiento Administrativo, 5 U.S.C. sec. 551 *et seq.* El historial legislativo de la L.P.A.U. tampoco contiene una discusión pormenorizada de la misma. Sin embargo, ante el propósito legislativo ya reseñado, en J.P. v. Frente Unido Pro Defensa Valle de Lajas, 2005 T.S.P.R. 117, res. 26 de agosto de 2005, págs. 18-19, interpretamos el alcance de la acción establecida en ese inciso de la forma siguiente:

> **Cualquier persona** puede impugnar la validez de una regla o reglamento aprobado por una agencia administrativa **por el incumplimiento de las disposiciones de la L.P.A.U.** dentro del término de treinta (30) días, **haya participado o no** durante la celebración de las vistas públicas celebradas como parte del proceso para su aprobación. **No tiene que ser afectad[a] por la aplicación de dicha regla o reglamento para tener la capacidad para promover la referida impugnación ante el Tribunal de Apelaciones.** (Énfasis suplido).

Del mismo modo, señalamos que cualquier persona *afectada* por la aplicación de un reglamento puede impugnar su validez ante el Tribunal de Primera Instancia *en cualquier momento*, ya sea por razones constitucionales o por otros motivos. Por ende, reconocimos que la acción de impugnación reglamentaria provista por la L.P.A.U. es distinta de cualquier proceso que pueda entablar un ciudadano agraviado por la acción de una agencia, bien tras un procedimiento de adjudicación o a raíz de la aplicación

de un reglamento que, a su entender, carezca de validez. Véase Asoc. Dueños Casas Parguera, *supra*, pág. 315, n.4; Fernández Quiñones, *supra*, págs. 120-22.

Fundamentalmente, dicha distinción responde al hecho de que los tribunales ordinariamente examinan la validez de los reglamentos *de forma colateral*. Por lo general, el foro judicial no interviene directamente con la acción de la agencia al adoptar sus reglamentos, sino que la revisión se produce a través de pleitos particulares en los que se cuestionan las determinaciones tomadas por las agencias al amparo de éstos. Esas acciones normalmente están relacionadas con intentos *concretos* de aplicar la regla impugnada. Por eso, en la práctica, el interdicto, la sentencia declaratoria y el propio procedimiento para hacer cumplir la resolución de la agencia son los mecanismos más utilizados al revisar la validez de las reglas administrativas. Véase D. Fernández Quiñones, La Revisión Judicial de las Decisiones Administrativas, 69 Rev. Jur. U.P.R. 1129, 1147-48 (2000); e.g., Asoc. de Maestros, *supra*; Colegio de Optómetras, *supra*.

Ahora bien, al considerar esta causa de acción hay que tener presente que, como señala el profesor Fernández Quiñones, puede ser "irreconciliable la expresión 'de la validez de su faz' por el incumplimiento, toda vez que la regla no refleja de su faz el incumplimiento de lo pautado por la ley". Por consiguiente, la falta a la que alude la Sec. 2.7 de la L.P.A.U. *no surge del texto de la norma promulgada*, sino que es consecuencia de una "inacción o

desatención de los funcionarios que intervienen en la adopción de la regla". Fernández Quiñones, *supra*. En otras palabras, la referida acción de impugnación reglamentaria no sólo tiene la característica de que puede ser instada por cualquier persona dentro del término jurisdiccional de treinta días dispuesto en la ley, sino que también aplica solamente en unas circunstancias específicas.

De esa forma, al establecerse que la impugnación del reglamento es "de su faz" se prescinde de la necesidad de considerar hechos relativos a la aplicación concreta del mismo. Es decir, no se requiere demostrar una lesión a un interés individualizado del litigante para que proceda la revisión, ya que ésta busca invalidar el reglamento en toda circunstancia en que pueda ser aplicable. No obstante, de acuerdo con el propio texto de la Sec. 2.7 de la L.P.A.U., esa impugnación "de su faz" **se circunscribe a los casos en que se alegue el incumplimiento con las garantías procesales de la propia ley**. Véase J. A. Echevarría Vargas, <u>Derecho Administrativo Puertorriqueño</u>, Situm, 2007, págs. 84-85; cf. <u>Preminger v. Secretary of Veterans Affairs</u>, 517 F.3d 1299, 1308 (Fed. Cir. 2008); <u>Disabled American Veterans v. Gober</u>, 234 F.3d 682, 688 (Fed. Cir. 2000).

La referida característica es producto de una determinación legislativa expresa mediante la cual, con el propósito de lograr un fin determinado, el legislador creó un interés legal a favor de la ciudadanía. El menoscabo de ese interés por causa de las actuaciones de una agencia administrativa, efectivamente, es lo que permite que

cualquier ciudadano reclame la reparación de un daño que en otras circunstancias se concebiría como abstracto y generalizado. Véanse L. S. Bressman, Procedure as Politics in Administrative Law, 107 Colum. L. Rev. 1749, 1796-1804 (2007); C. R. Sunstein, Standing Injuries, 1993 Sup. Ct. Rev. 37 (1993); C. R. Sunstein, What's Standing after Lujan? Of Citizens Suits, "Injuries", and Article III, 91 Mich. L. Rev. 163, 191 (1992).

En suma, la normativa reseñada permite comprobar la existencia de dos de las condiciones necesarias para la revisión judicial. Por un lado, precisa las personas que tienen derecho a solicitar la revisión judicial de un reglamento bajo la L.P.A.U. y, de otro, establece el alcance de la facultad revisora del foro judicial.

B.

No es la primera vez que nos enfrentamos a situaciones de esta naturaleza. En Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716 (1974), reconocimos la facultad tanto de una organización de asuntos ambientales como de uno de sus miembros para solicitar un *mandamus* contra el Secretario de Agricultura, quien había aprobado un reglamento sobre venenos y pesticidas sin antes someter ante la Junta de Calidad Ambiental la correspondiente declaración de impacto ambiental. Dicho proceder respondió al hecho de que por *vía estatutaria* se proveía "expresamente para el ejercicio en **determinadas circunstancias de una acción pública, limitada al *mandamus*,** por ciudadanos privados 'afectados por la falta de implementación de [la Ley sobre Política Pública

Ambiental entonces vigente]'".[1] <u>Salas Soler</u>, *supra*, pág. 721 (énfasis suplido); cf. <u>Fundación Arqueológica v. Depto. de la Vivienda</u>, 109 D.P.R. 387 (1980).

<u>Salas Soler</u> presentaba un agravio que, por ser compartido por la sociedad en general, ordinariamente no sería susceptible de consideración judicial. Sin embargo, no desestimamos la demanda presentada en ese caso ya que la Asamblea Legislativa había autorizado expresamente la presentación de un *mandamus* contra el Secretario de Agricultura. Es decir, a fin de remediar los problemas que motivaron la aprobación del estatuto invocado en <u>Salas Soler</u>, el legislador autorizó que a solicitud de cualquier ciudadano *afectado* por la *falta de implementación de la ley* se pudiese exigir su cumplimiento mediante un *mandamus*. En cierto sentido, el caso ante nuestra consideración presenta una actuación legislativa similar.

A través de la L.P.A.U. el legislador instituyó la acción de impugnación de reglamentos con el propósito de **garantizar que las agencias cumplan con el procedimiento pautado por dicha ley y evitar que éstas pongan en marcha normas que lo contravengan**. De esa forma, al aprobar la Sec. 2.7 de la L.P.A.U. el legislador reconoció como un daño el incumplimiento con esa normativa procesal, a fin de permitir

---

[1]De igual forma, concluimos que los demandantes demostraron haber sufrido un daño concreto, ya que no era necesario que éste fuese de naturaleza económica. No obstante, señalamos que nuestra decisión en ese sentido no implicaba una autorización para la presentación por un ciudadano, en todo contexto, de acciones en alegada defensa de una política estatal. Véase <u>Salas Soler</u>, *supra*, págs. 723-24.

que una persona o entidad impugne un reglamento sin que previamente demuestre haber sido afectado por su adopción o aplicación. Como corolario de ese reconocimiento, sin embargo, es indispensable que los planteamientos formulados al amparo de la referida acción guarden relación con el menoscabo que se pretendió evitar.[2]

Por ende, al igual que en Salas Soler, la corrección del uso de la acción de impugnación en el caso de autos depende, esencialmente, del alcance de una autorización legislativa. Como hemos visto, el mismo está delimitado por la propia Sec. 2.7, la cual decreta nula toda regla en cuyo proceso de adopción se **incumpla sustancialmente con las disposiciones de la L.P.A.U.** De una interpretación integrada de sus tres incisos, tomada razón de que dicha sección es parte de un esquema legislativo más amplio, se desprende con meridiana claridad que el campo de operación de la acción de nulidad está limitado a situaciones en que se alegue el incumplimiento con el proceso de reglamentación de la L.P.A.U o de alguna otra disposición de esa ley. En consecuencia, resulta forzoso concluir que la Sec. 2.7 de la L.P.A.U. no dejó margen para la presentación de argumentos de otro tipo por parte de ciudadanos meramente interesados

---

[2]Así se pone en vigor la intención legislativa de proveer un medio eficaz para que los tribunales hagan cumplir el proceso de reglamentación de la ley y garanticen que las agencias actúen de acuerdo con las facultades que les fueron delegadas. Véanse R. J. Pierce, Jr., Lujan v. Defenders of Wildlife: Standing as a Judicially Imposed Limit on Legislative Power, 42 Duke L.J. 1170 (1993); P. L. Strauss, Revisiting Overton Park: Political and Judicial Controls over Administrative Actions Affecting the Community, 39 UCLA L. Rev. 1251 (1992).

en solicitar la anulación de un reglamento que, en términos procesales, cumplió sustancialmente con las exigencias de la L.P.A.U.

En cierta forma, esto es el reflejo de que el legislador tuvo en mente que nuestro ordenamiento requiere que las controversias objeto de adjudicación gocen de la madurez suficiente como para permitir la dilucidación de los asuntos planteados con certeza y fluidez. Véase, e.g., Asoc. Guardias Penales v. Srio. de Justicia, 87 D.P.R. 711 (1963). Así, por ejemplo, en la jurisdicción federal se ha resuelto reiteradamente que las impugnaciones instadas *antes* de que se ponga en vigor la regla en controversia (*pre-enforcement challenges*), por lo general, no presentan un "caso o controversia".[3] Véanse, e.g., United Public Workers v. Mitchell, 330 U.S. 75 (1947); A. T. & T. Corp. v. Iowa Utilities Board, 525 U.S. 366, 384 (1999); R. D. Rotunda & J. E. Nowak, Treatise on Constitutional Law: Substance and Procedure, 4ta ed., Thomson/West, vol. 1, sec. 2.13(d), págs. 291-302; véase, además, Asoc. de Maestros, *supra*, pág. 87, n.6.

Además, nuestra interpretación de la Sec. 2.7 de la L.P.A.U., más allá de considerar aisladamente lo que establece el texto de la citada disposición, toma en cuenta el marco jurídico y el entorno social en que se aprobó la L.P.A.U.: la existencia de un sinnúmero de agencias con

---

[3]El señalado impedimento, claro está, no afecta la consideración de una impugnación bajo la Sec. 2.7 de la L.P.A.U., puesto que cuando una agencia incumple con el procedimiento de dicha ley, en ese momento, la controversia cobra vitalidad.

procesos disímiles y de difícil comprensión. Además, reconoce la función que el legislador previó para la misma y el efecto del significado que los tribunales le hemos dado desde su aprobación: garantizar que las agencias cumplan con los criterios uniformes pautados por el estatuto.

De esta manera, atendemos el problema que el legislador quiso corregir y hacemos más efectivo el remedio seleccionado para lograr ese objetivo. Concretamente, fortalecemos la particular función de la acción de nulidad de la L.P.A.U. como medio para garantizar que las agencias administrativas del país cumplan a cabalidad con el procedimiento de reglamentación establecido por dicha ley. A su vez, evitamos sujetar a los reglamentos promulgados por esas agencias a una revisión judicial directa por causas que no fueron contempladas por el legislador al regular la manera en que habría de ejercerse la facultad revisora de los tribunales.

III.

A pesar de lo anterior, en su comparecencia ante nos los recurridos elaboran varios argumentos para sostener su impugnación bajo la reseñada acción de nulidad. Sin embargo, a la luz de la normativa antes expuesta, sólo uno de sus planteamientos podía ser presentado a través de la acción regulada por la Sec. 2.7 de la L.P.A.U. En síntesis, los recurridos alegan que el Reglamento para la Imposición de Multas Administrativas, *supra*, contempla sanciones máximas de hasta $500,000.00, lo cual argumentan va en contra de las normas de la Sec. 7.1 de la L.P.A.U., 3 L.P.R.A. sec. 2201.

Dicha sección establece que toda violación a las leyes o reglamentos que administra la agencia podrá ser penalizada con multas administrativas que no excederán de $5,000.00.

Ahora bien, acto seguido, la citada sección prescribe lo siguiente: "Si la ley especial de que se trate dispone una penalidad administrativa mayor a la que se establece en esta sección, la agencia podrá imponer la penalidad mayor". A esos efectos, el Art. 21 de la Ley de Servicio Público de Puerto Rico, *supra*, decreta que el máximo de cualquier sanción a imponerse por la Comisión de Servicio Público no podrá exceder de $10,000.00 por infracción. En casos de conducta reiterada y contumaz, a la cual se refiere la cifra de $500,000.00 antes mencionada, el citado Art. 21 fija la sanción máxima, precisamente, en esa cantidad. Véase 27 L.P.R.A. sec. 1108. Por consiguiente, en cuanto a este aspecto de la controversia ante nos, no les asiste la razón a los recurridos.

Sobre los demás señalamientos de los recurridos, éstos se basan en fundamentos que no guardan relación alguna con los propósitos de la aludida Sec. 2.7, ni con el procedimiento de reglamentación de la L.P.A.U. Por tanto, los mismos no podían ser presentados por los recurridos ante el Tribunal de Apelaciones bajo las circunstancias del caso de autos, pues van más allá de la autorización concedida por el legislador para revisar judicialmente los reglamentos promulgados por las agencias administrativas del país. Permitir que cualquier persona formule los referidos planteamientos a través de esa acción, tendría el efecto

ilógico de exponer a los reglamentos administrativos a una revisión directa por parte del Tribunal de Apelaciones, antes de que se pusiesen en vigor y aun cuando en su aprobación no se hubiese incumplido con los procedimientos pautados por la L.P.A.U.

En fin, el caso de autos es demostrativo de los problemas que presenta la utilización de la Sec. 2.7 de la L.P.A.U. fuera de las instancias anticipadas por el legislador al adoptarla. Por ejemplo, en este caso no existe evidencia alguna de que los recurridos hayan sufrido un daño concreto como consecuencia de la aprobación del reglamento en cuestión. De igual forma, el carácter particular de la acción de impugnación de la L.P.A.U. no nos permite determinar si las entidades recurridas satisfacen la definición de "pequeño negocio" de la L.F.A.R., a fin de precisar si tienen derecho a invocar el amparo de sus disposiciones. Tampoco podemos evaluar el contexto en que se dan las presuntas violaciones constitucionales, por cuanto del expediente lo único que surge es una mera alegación a esos efectos.

Así, pues, en consideración de lo anterior, somos del criterio que en el caso de autos tampoco están presentes las circunstancias necesarias para poder atender el reclamo de los recurridos bajo las normas sobre revisión judicial de la L.F.A.R. En primer lugar, el Art. 11 de la L.F.A.R. dispone que una "pequeña empresa" agraviada o adversamente afectada por la acción de una agencia puede presentar un recurso de revisión "en los tribunales" para evaluar el cumplimiento

con las normas de dicha ley. Más adelante, el citado artículo establece la exclusividad de ese remedio estatutario. Sin embargo, según se desprende de los autos, las entidades recurridas no han demostrado que estén cobijadas por la definición de "pequeña empresa" de la L.F.A.R. Tampoco han alegado que hayan sido afectadas adversamente por la presunta inatención de la Comisión de Servicio Público a las normas de dicha ley.

Claramente, todo ello es el resultado de que bajo la L.F.A.R. la revisión judicial está enmarcada en el contexto de la aplicación de un reglamento; contrario a lo que ocurre bajo la L.P.A.U., en que la revisión judicial es "de su faz". Por tal razón, es evidente que el foro apelativo no es el más adecuado para atender un recurso de revisión bajo la L.F.A.R. En ese sentido, el propio legislador estableció que este tipo de recursos se inste "en los tribunales", en vez de asignar la competencia exclusiva sobre los mismos a un foro como el Tribunal de Apelaciones, siguiendo el modelo de la Sec. 2.7 de la L.P.A.U. Así, pues, como la impugnación de una aplicación concreta de un reglamento normalmente requiere la formulación de determinaciones de hecho, estamos convencidos de que el foro más adecuado para atender este tipo de acciones es el Tribunal de Primera Instancia. Véase, en general, R. J. Pierce, Jr., Administrative Law Treatise, 4ta ed., Aspen, Nueva York, vol. 3, sec. 18.2, 1326-43.

En vista de todo lo anterior, concluimos que el Centro Unido de Detallistas y demás recurridos solamente estaban autorizados bajo la Sec. 2.7 de la L.P.A.U. a presentar

argumentos relacionados al incumplimiento de una agencia administrativa con las disposiciones de la propia L.P.A.U. Por ende, éstos no podían utilizar dicha acción para obviar los requisitos que podrían activar el remedio exclusivo de la L.F.A.R. En última instancia, el único planteamiento de los recurridos que podía considerar el Tribunal de Apelaciones bajo la aludida sección --relativo al monto de las multas administrativas contenidas en el reglamento impugnado-- resulta inmeritorio. En consecuencia, erró el Tribunal de Apelaciones al declarar nulo el Reglamento para la Imposición de Multas Administrativas promulgado por la Comisión de Servicio Público.

IV.

Por los fundamentos antes expuestos, revocamos la Sentencia emitida por el Tribunal de Apelaciones y, en su lugar, desestimamos el recurso de revisión judicial instado por los recurridos al amparo de la Sec. 2.7 de la L.P.A.U.

Se dictará Sentencia de conformidad.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro Unido de
Detallistas, et. al.

   Recurridos

       v.                               CC-2007-690      Certiorari

Comisión de Servicio Público

   Peticionaria


SENTENCIA


San Juan, Puerto Rico, a 11 de julio de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia emitida por el Tribunal de Apelaciones y, en su lugar, se desestima el recurso de revisión judicial instado por los recurridos al amparo de la Sec. 2.7 de la L.P.A.U.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo